STATE v. TURNER.

1. EVIDENCE.—A witness for the State having made a statement on his direct examination which, he admitted on his cross-examination, he had not made in his testimony at the coroner's inquest, the trial judge did not err in permitting this witness to testify in reply, that he had

made the same statement at other times, and had included it in his affidavit on the occasion of defendant's application for bail.

2. IBID.—HUSBAND AND WIFE.—A husband may not be compelled to disclose a confidential communication made to him by his wife, but where the defendant takes the witness stand and discloses of his own motion a statement made to him by his wife, he may be required to make full disclosure of the conversation of which the statement was a part.

3. AN EXCEPTION not considered, because vague and too general.

4. EVIDENCE—CHARACTER.—A person may testify to the general reputation of a prior witness in the cause, and say whether from such reputation that witness was worthy of belief, when the present witness knows the voice of the resident community, without regard to the number of people he has heard express themselves, or whether he has personal acquaintance with the witness whose character for veracity has been assailed.

5. CONDUCT OF TRIAL—ARGUMENT—APPEAL.—In the argument of causes, counsel, while allowed some freedom, are restricted by general rules of conduct, to be enforced under the direction and control of the trial judge ; but if improper statements are made by counsel in a law case, they can be reviewed in this court only by appeal from some ruling of the trial judge on the subject. Therefore, if the prosecuting officer stated to the jury matters of fact not proven, and also appealed to their prejudices, this court cannot review his conduct where the trial judge was not asked at the time to rule upon the matter.

6. CASES CRITICISED.—This case distinguished from *State* v. *McNinch,* 12 S. C., 89, and *State* v. *Robertson,* 26 S. C., 117, approved.

7. PRISONER AS WITNESS—RELIGIOUS BELIEF.—Where the prisoner takes the stand as a witness in his own behalf, he, like any other witness, may be interrogated as to his religious belief.

8. CHARGE ON FACTS.—An incidental remark made by the trial judge during the progress of the trial, not involved in any ruling, characterizing a statement of the prisoner as a conditional threat, did not violate the letter or spirit of the constitutional inhibition against charging on the facts.

Before NORTON, J., Spartanburg, July, 1890.

Indictment against George S. Turner for murder. The opinion states the case.

*Messrs. Bomar & Simpson, Duncan & Sanders, Nicholls & Moore, S. W. Melton,* and *Geo. Johnstone,* for appellant.

*Mr. Schumpert,* solicitor, contra.

July 14, 1892.    The opinion of the court was delivered by

MR. JUSTICE McGOWAN.    At the July term, 1890, of the Court of General Sessions for Spartanburg County, George S. Turner was indicted and tried for the murder of Edward H. Finger.    He was found guilty of murder and sentenced to be hanged on October 5, 1890.    From this verdict and judgment he now appeals to this court for a new trial upon alleged errors of law. There is no "case stated" digesting the testimony, from which the errors of law are claimed to arise.    But it is all given just as it fell out in court, making a volume of more than two hundred pages of printed matter.    There are seven requests to charge, and, in addition, numerous grounds of appeal, thirty-nine in number.    They are all in the record, and, of course, cannot be restated here.    It is quite impossible to consider the matters *seriatim*.    We assume that the able counsel for the defence classified the points to be considered, so as to do the defendant full justice, and we will therefore follow the condensed order of their argument.

*First.* "It is alleged that there was error in allowing the witness, Joseph Finger, to be examined in reference to an *ex parte* affidavit he had made."    Joe Finger was a brother of the deceased, and having been present at the killing, was examined at great length.    In the cross-examination he was interrogated about the statement he had made upon a particular point at the inquest, and it was claimed that in his testimony he made statements which he had not made at the inquest before the coroner.    In reply, the solicitor called his attention to the discrepancy, and he was allowed to state that at other times his statements were the same, "consistent" with his testimony, and in that connection he made reference to an affidavit which he had made before Mr. Wilson, about the time the defendant applied for bail.    Objection was made that such explanation was "irrelevant" and not in reply to anything brought out in the cross-examination.    The court ruled that he thought it competent, "where a witness is explaining his failure to make his two statements the same, to show that at other times, soon after, he said what he did ; he did not recollect at the coroner's inquest ; that it is competent for him to show that this is not the first time he

did recollect it. If the examination in reply relates to that, I think it is competent for the witness to show that his explanation was the proper one, by showing that he did remember it and make the statement soon afterwards. I would not admit the reading of the whole affidavit, but only of that part that relates to the particular point." After this ruling the affidavit was not introduced.

We do not think this was fatal error of law. Even if the evidence was, as claimed, "irrelevant," that would not be sufficient ground for a new trial, unless the Circuit Judge abused his discretion, which we do not think he did. See *State* v. *Merriman*, 34 S. C., 18. The cases of *State* v. *Thomas*, 3 Strob., 269, and *Davis* v. *Kirksey*, 2 Rich., 176, cited for the defendant, are not analogous. In each of these cases, the proposition was to adduce new and original testimony of "consistent declarations" of a witness who had been examined; and that after the testimony in the case had been regularly closed, which, of course, was refused. In the case of *Davis* v. *Kirksey*, it is stated that "after the plaintiff's evidence in reply was closed, the defendant offered to prove "consistent declarations" of a witness made at another time, which was rejected. In determining the judgment of the court, Judge Frost said: "In strict practice, he who has the affirmative ought to introduce all the evidence to make out his side of the issue; then the evidence of the negative side is heard; and finally the rebutting proof, the affirmative, which closes the investigations. * * * In the direct examination of the witness by the party producing him, all material facts are to be brought out in the first instance. On the cross-examination by the adverse party, he must elicit and produce all that he may require of the witness; and in the examination in reply, the party producing the witness is strictly confined to the examination of matters adduced by the cross-examination. No new question can be put in reply, unconnected with the cross examination by the party producing the witness," &c.

Now, taking this to be the correct rule, and applying it to this case. In the direct examination the witness could not foresee what would be asked him on the cross-examination. It turned out that he was interrogated as to the statement made by him at

the coroner's inquest, doubtless with a view of affecting his credibility. In reply he was entitled to speak "as to all the matters adduced by the cross-examination." We cannot say that the judge erred in ruling that it was fairly in reply to allow the witness to make explanation, if he could, that at the inquest over the dead body of his brother, he may not have recalled all the circumstances of the affair, as fully as he did remember and state them soon afterwards. "After a witness has been cross-examined respecting a former statement made by him, the party who called him has a right to re-examine him as to the same matter." 1 Greenl. Evid., § 467.

*Second.* "It is alleged that there was error in allowing the State to examine the defendant as to communications made to him by his wife." The defendant availed himself of the privilege allowed, to go on the stand as a witness in his own behalf. While being cross-examined by the solicitor, he was asked whether he had said that the deceased, Ed. Finger, had threatened his life, to which he replied, "Yes, my wife told me that he was threatening to blow my brains out." The solicitor then asked, "What for ? What did your wife tell you he threatened you for ?" To which the defendant said, "I decline to answer that question." The solicitor then changed the form of the question as follows : "What else did your wife tell you at that same time and that same conversation ?" The judge ruled that, as an original question, the defendant could not be compelled to disclose the confidential communications of his wife ; but having, without being asked, voluntarily told part of a communication, he did not know that it was an exception to the general rule laid down in the books, that when a part of a communication is brought out, the whole of it may be brought out. It would seem that this was not in violation of the law, which provides that "no husband or wife shall be compellable to disclose any confidential communications made by one to the other during their marriage."

*Third.* "That it was error to allow the State to bring out in an indirect manner from Clara Finger anything that had transpired between herself and the defendant." This exception is certainly too vague and general to be considered.

The whole of the testimony has been carefully read, and we really do not clearly see to what part of the record reference is made.

*Fourth.* "There was error in allowing the witness, Daniel Willis, to testify that he would not believe Harriet Henderson on her oath, or to refuse to strike out the testimony on motion of the defendant." The Harriet Henderson referred to had been examined as a witness for the defence. Willis, with others, was examined to discredit her. He was asked if he knew Harriet Henderson, and he replied that he knew her when he saw her, but had no personal acquaintance with her. Q. "Do you know her general reputation in this community?" A. "Yes, sir; I have heard her spoken of frequently?" Q. "What people say about her in the community?" A. "Yes, sir." Q. "Is it good or bad?" Counsel objects that the answer to the preliminary question did not authorize the examination to proceed. His honor, the judge, then put the question, "Would you say that you had heard any general conversation as to her character?" To which the witness replied, " I think so; yes, sir." Whereupon the judge allowed the examination to proceed, and the witness testified that the character of Harriet Henderson was not very good, and from that character he would not believe her on her oath. Counsel for the defendant afterwards moved to strike out the testimony, which the judge refused, saying, "Because I think the witness had shown sufficient knowledge of the general character of the witness concerning whom he was testifying, to say whether or not he would believe her on oath." The expression, "general character," has always seemed to me to be somewhat vague and undefined, depending somewhat on the habits, condition in life, age, sex, &c., of the person referred to. We do not understand that the judgment required by the formula, must be based upon the declarations of any particular number, for what would be general character as to one, might not be as to another, but upon the general voice of the community in which the party lives. The witness said he had "heard general conversations" as to the character of the person referred to. The judge was present; it was necessary for him to decide the matter. He seems to have been careful about it, and we can-

not say that his refusal to strike out the testimony was error of law.

*Fifth.* "That there was error of law in allowing the witness, Robert McMillen, to impeach the character of the witness, Harriet Henderson, without ever having known her, or without knowing that she was the person he was testifying about, or to say it was his understanding that she was the same person who testified in the Metskic case, when he had never seen her and did not know her," &c. We would make the same general remark here that was made above as to the witness, Daniel Willis. The rule as to the manner of impeaching the character of a witness does not in the least depend upon particular facts about the witness known by the impeaching party. On the contrary, such things are strictly excluded from consideration. In making such an inquiry, the only matter pertinent or allowable is the reputation, the character, of the person referred to; that is to say, not what offence the party has committed, but what is the general voice of the community on the subject of his character. And we do not see why that cannot be known as well by one who has not, as by one who has, a personal acquaintance with the party. This witness said he did not know Harriet Henderson, but that he did "know from hearsay her reputation, and that it was not good." That was sufficient.

*Sixth.* This proposition is long and seems to embrace two distinct matters. (1) That it was error of prejudice for the court to permit the prosecuting attorneys to argue to the jury, as facts in the case, things that had been excluded. (2) Or to appeal to the jury not to believe the defendant, because he was a man of no religion and did not believe in God, heaven, or hell.

(*A*) It has been said that a court of justice, allowing argument of counsel on both sides, before a disinterested judge, to rule the law as it becomes necessary, furnishes the most efficient means yet devised for the discovery of truth. Be that as it may, it is plain that upon a trial there are certain general rules and regulations which should be observed; as, for instance, that in argument, counsel should keep themselves within the record, and in commenting upon the testimony, which they have a right to do, they should scrupulously avoid anything like

giving testimony themselves. But beyond such general rules,
cases are so different and varying in character that each must
depend somewhat upon its own circumstances; and in the conduct
of the cause, some freedom in argument, as in suggesting infer-
ences, analogies, probabilities, illustrations, &c., must be allowed.
As no rigid rule can be fixed in advance as to such matters, it
would seem that they have been left largely to the sense of pro-
priety and justice of an honorable profession, under the absolute
direction and control of the trial judge. As was said by this court
in the late case of *State* v. *Robertson*, 26 S. C., 118: "It is often
matter of difficulty to draw the line sharply between legitimate
argument and unauthorized statement—between what is and what
is not allowable—and as this pertains to the conduct of the cause,
it must, to a large extent, be left to the wise discretion of the
Circuit Judge." "The conduct and management on the argu-
ment upon the trial of either a civil or criminal prosecution, is
largely within the discretion of the trial court; and it is only
when some abuse of this discretion, to the probable injury of the
party, is shown, that an appellate court will interfere." 4 Am.
& Eng. Enc. Law, 875.

In a law case, the constitutional power of this court is limited
to the correction of errors of law, committed below, when they
reach the tribunal in the regular way upon exceptions taken. It
does not appear in this case that the matter complained of was
brought to the attention of the Circuit Judge at the time of the
trial, or that he was moved for any order, or made any ruling
upon the subject, or that any exceptions were filed. But it is
urged that this court, being the highest judicial tribunal in the
State, may, and ought to, take jurisdiction of the matter, upon
the broad ground claimed for the defendant, that "a fair and im-
partial trial" has not been vouchsafed to him. I do not under-
stand that the jurisdiction of this court is so wide and unlimited.
Such is not the doctrine of our decided cases. "The Supreme
Court can make no original decision upon a point not ruled upon
below." *Railroad Com'rs* v. *Railroad Company*, 22 S. C., 220,
and *Dulany & Co.* v. *Elford & Dargan*, 22 S. C., 304. Besides,
if this court had the right to ignore the Circuit Judge in the con-
duct of causes, and to establish the practice contended for, the

certain effect would be to unsettle the law, and produce delays and confusion in its administration.

It is, however, strongly urged upon us that our case of *State* v. *McNinch*, 12 S. C., 89, decided that in a capital case this court will take notice of errors apparent upon the record, affecting the substantial rights of the prisoner at his trial, although not made a ground of appeal. A glance at that case will show that the defendant was deprived of the plain and important right to cross-examine a witness put upon the stand and examined by the State. This was done by the express order of the Circuit Judge, and was apparent on the record, for it was reported to this court by the Circuit Judge himself. This case is not analogous to that, but much more like that of *State* v. *Robertson* (26 S. C., 118), *supra*, in which the decision was that the court could not affirm that the omission of the Circuit Judge to restrain the solicitor in his argument was such error of law upon his part as to authorize this court to set aside the verdict upon that ground.

The researches of the learned counsel for the defendant enabled him to cite a number of cases from other States, in which verdicts were set aside upon grounds somewhat like these alleged here—that the prosecuting attorneys had transcended the limits of legitimate argument, or invoked prejudices to the injury of the defendant. We have not been able to examine all of these cases, but we have looked through some of them, and among the number that most remarkable case of Woolfolk of· Georgia, who murdered his whole family, and upon a second trial was again convicted and executed—reported in 81 Ga., 559, and also in 8 S. E. Rep., 724. In that case, after the first conviction, a new trial was granted—not, however, upon the ground of the applause and cries of "hang him," "hang him," in court during the trial, but for some error in refusing or admitting testimony. It is, however, true that Judge Simmons, in delivering the judgment of the court, did say that the new trial was granted with "less reluctance" on account of the passion and prejudice exhibited at the trial; but while the judgment was not placed on that ground, the court announced what we think was good law, as follows : "When, on a murder trial, the argument for the State is applauded, and cries

of 'hang him' proceed from the listeners, it is the duty of the judge to ascertain the guilty persons and punish them to the extent of the law." This seems to have been the view of the Circuit Judge in this case, for when the applause occurred, he immediately ordered the parties arrested, and in his charge to the jury said: "I desire to call your attention to the fact, that any appeal to you, either on the part of the State or of the defendant, to do anything but find the facts in the case, is an insult either to your sense or your integrity. The law assigns to you the duty of determining what the facts are, and applying the facts to the law as I shall deliver it to you. * * * You have no right to look either to the right or the left. You are to determine from the testimony adduced upon the stand what the facts of the case are, and to consolidate those facts into your verdict, which you will deliver into this court," &c.

(*B*) As to the alleged appeals to the jury not to believe the defendant on his oath, because of his alleged religious opinions. The defendant availed himself of his privilege to take the stand as a witness. Upon his cross-examination he was asked if he had not made certain declarations to certain persons named, ridiculing religion, which he denied, and the judge held that the State could not contradict him by the witnesses named. This ruling was certainly not error, of which the defendant could complain, if, in taking the stand, he had placed himself in the condition of an ordinary witness. This court has held that when the accused testifies in his own behalf, as permitted by the statute, "as to the facts and circumstances of the case," he is subject to all the incidents of a regular witness, and therefore his general reputation for veracity may be assailed." *State* v. *Robertson*, 26 S. C., 117; Whart. Crim. Evid., §§ 423, 424; 4 Am. & Eng. Enc. Law, 871, and notes.

We gather from the supplemental argument, that still another point is made, although not embraced in the exceptions. It is stated as follows: That at folio 305 of the immense Brief, Clara Finger testified that the defendant told her in March, 1889, "When Ed. (deceased) finds out what I have done, I expect I will have to kill him"; and that afterwards, during the progress of the trial, in making a ruling, the judge had occa-

sion to refer to this testimony, and he did so in the following terms: "No, sir, the threat is conditional; that he supposed when Finger found out a certain fact, which was not stated at all, * * * that he would have to kill Finger." Now, the point is made, that in speaking of the matter as "a conditional threat," the judge violated the spirit, if not the intention, of section 26, article IV., of the Constitution. The remark was not made in charging the jury, but in making a ruling during the progress of the trial. The judge was not expressing an opinion on the subject one way or the other, which, by any possibility, could reach and influence the jury; and it seems to us that it would be a great stretch of construction to hold that such an incidental remark, made during the progress of the case, amounted to a violation of the provision of the Constitution, which prohibits judges from charging juries as to matters of fact.

The judgment of this court is, that the judgment of the Circuit Court be affirmed, and that the case be remanded to the Circuit Court, in order that a new day may be assigned for the execution of the sentence heretofore imposed.