STATE v. ARNOLD.

THE STATEMENTS of a man shot in the doorway of a house, that "Charlie shot me to death," made to a woman and child as soon as they could reach him, he having run out of the house, when shot, into the yard thirty yards, were properly admitted as part of the *res gestæ*.

Before EARLE, J., Abbeville, January, 1896. Affirmed.

The defendant, Charles Arnold, was indicted and convicted of murder for shooting George Merryweather, and,

upon recommendation to mercy, was sentenced to life imprisonment in State penitentiary. Defendant appeals, on following exceptions:

1. Because the presiding Judge erred in allowing the witness, Lucy Wardlaw, to testify to a declaration of George Merryweather, the deceased, alleged to have been made to her by him ten minutes after he was shot, as to the person who shot him, said declaration being a hearsay, and not a part of the *res gestæ*, upon which ground it was admitted by the Judge.

2. Because the presiding Judge erred in allowing the witness, Janie Wardlaw, while being examined for the State, over the objection of the defendant, to testify as to an alleged declaration made by the deceased, George Merryweather, to Lucy Wardlaw, after he was shot, as to the person who had shot him, said declaration being hearsay, not made to the witness, and not admissible either as a dying declaration or a part of the *res gestæ*.

3. Because the presiding Judge erred in refusing to strike out the testimony of the witnesses, Lucy Wardlaw and Janie Wardlaw, as to the alleged declarations of the deceased, George Merryweather, made to Lucy Wardlaw after he was shot.

4. Because the Judge erred in refusing to grant the defendant a new trial, on the ground that it was error in the Court to allow the testimony of the witnesses, Lucy Wardlaw and Janie Wardlaw, as to the alleged declaration of George Merryweather, to be submitted to the jury.

5. Because the testimony of Lucy Wardlaw showed that the alleged declaration of George Merryweather, the deceased, was made to her ten minutes after he was shot, some distance from the scene of the shooting, and was made in reply to a question of the witness to him, and was not a part of the *res gestæ*, and the presiding Judge erred in holding that said declaration was a part of the *res gestæ*, and admissible as such.

*Messrs. Graydon & Graydon,* for appellant, cite Greenl. on Ev., sec. 110; *State* v. *Belcher,* 13 S. C., 459; *Jones* v. *Commonwealth,* 10 S. E. R., 1004; Whar. Crim. Ev. (9th ed.), secs. 262, 296; *State* v. *Wise,* 32 S. C., 582.

*Solicitor Ansel,* contra, filed no argument.

July 3, 1896. The opinion of the Court was delivered by

MR. JUSTICE POPE. On the 19th day of November, 1895, one George Merryweather was shot, from which wound he almost immediately thereafter died. The defendant, Charles Arnold, was at the January, 1896, term of the Court of General Sessions for Abbeville County, in this State, tried before Judge Earle and a jury for having murdered said deceased. He was found guilty of murder, but recommended to the mercy of the Court. Whereupon he was sentenced to imprisonment for life at hard labor in the State penitentiary. His appeal to this Court is based upon alleged errors of the Circuit Judge in the admission of certain testimony; in his refusal to strike out said testimony; and in his refusal to grant a new trial because such testimony was not admissible. Let the grounds of appeal be reported. Thus it appears that the appeal is based upon the question of the competency of certain testimony. Was such testimony competent?

The underlying history of this tragedy, as appears from the record, seems to be this: Charles Arnold, although a married man, seems for some years to have maintained a criminal intimacy with one Lucy Wardlaw, both parties belonging to the African race, and, as the result of such relations, she bore him two children. The deceased, George Merryweather, had been paying attention to said Lucy Wardlaw with a view to marriage. Indeed, such suit of the deceased had gone so far as that an engagement of marriage existed between them. These circumstances seem to have stirred Charles Arnold's nature into a most deadly jealousy, if we are to judge from the many threats of death to both the deceased and Lucy Wardlaw in case she tol-

erated the attentions of Merryweather, or in the event of
their marriage. So deeply was Arnold stirred by this feel-
ing of jealousy that he was unmoved when the poor woman
explained to him that she was weary of her life of sin and
wished to become a reputable wife. So on the night of the
19th of November, 1895, just after a terrific wind storm,
and long after the woman Lucy and her children had re-
tired to rest in her lowly home, George Merryweather, on
his knocking at the door, is admitted therein. He pro-
ceeds to load his pistol, having first fired off two chambers.
During the time he was so employed he kept up a con-
versation with the woman. Having completed the load-
ing and greasing of his pistol, after some demurring on the
part of the woman, he is given permission to spend the
night there. With the door wide open, having taken a
drink of water, and after having removed his clothing pre-
paratory to seeking rest, and while at the open door, sud-
denly some one in the dark, and outside of the house, fires
a shot into his body at such close quarters that his under-
clothing is set on fire. The deceased cries, "Oh!" and
staggers off some thirty yards and falls. Upon his call,
the woman and the oldest child rush to his relief. They
find him putting out the fire on his clothing. What was
said was this: When she asked him, "What was the mat-
ter?" he replied, "I am shot." To her question, "You are
not shot, are you?" he replied, "Yes; Charlie has shot me
to death." Calling for and obtaining aid, he is removed
to her room and laid on a pallet in front of the fire, and
soon dies. When the woman and her little daughter tes-
tify, they fix the time between the firing of the fatal shot
and that when they reached the deceased at five or ten
minutes. But they also describe minutely the circum-
stances which intervened the shot and the time of reaching
the deceased after he was shot, which necessarily impress
the mind with the conclusion that it was a shorter interval
of time than five or ten minutes, thus demonstrating that
the witnesses use the terms "five or ten minutes" without

a due appreciation of time fixed thereby. If the expressions used by the deceased show that he regarded himself as *in extremis*, as viewing himself as bound to die, then this testimony is entitled to be admitted as a "dying declaration," and, if this be so, it was competent. We so regard it.

But was it entitled to be considered as "*res gestæ?*" The Judge so held, under the authority of the decision of the *State* v. *Belcher*, 13 S. C., 459. We know it is dangerous ground that we now travel, but it must be traveled, for the question is fairly presented. Judge McGowan, in the case last cited, in referring to this matter, says: "When the inquiry is as to a certain transaction, not only what was done, but also what was said by those present during the transaction, is admissible for the purpose of showing its character. Thus, as an illustration, it was held, in the prosecution of Lord George Gordon for high treason, that the cry of the mob which accompanied the prisoner was admissible as a part of the transaction. *Rex* v. *Lord George Gordon*, 21 How. St. Tr., 534. Declarations which accompany the act characterize it; but to do so, the declarations must be by the persons engaged in the act, contemporaneous with it, if not precisely concurrent in point of time, and proved as other facts by witnesses. To make declarations a part of the *res gestæ*, they must be contemporaneous with the main fact, *not, however, precisely concurrent in point of time. If they spring out of the transaction, elucidate it, and are made at a time so near to it as reasonably to preclude the idea of deliberate design, they are then to be regarded as contemporaneous*" (italics used in the last two sentences are ours), and cases cited. It does seem to us, that the Judge did not err in holding that the circumstances established by the witnesses as having occurred when this declaration of the deceased was made, show that the deceased could not have formed a deliberate design to speak falsely, and that such proof of the circumstances of this case clearly bring it within the limits fixed in the case of *State* v. *Belcher*, *supra*.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.