## STATE v. McDANIEL.

1. EVIDENCE.—REPUTATION of deceased for drinking is not competent in trial of murder case, on issue of deceased being treacherous and violent when drinking, defense being accidental killing.

2. IBID.—ILL WILL.—To show whether deceased and defendant in a murder case were friendly, it is competent to bring out on cross-examination differences between town council and defendant about electing a marshal previous to employment of deceased as marshal.

3. IBID.—CONTRADICTION—REPLY.—Where evidence of a contrary statement by a witness is offered by way of impeachment, it is incompetent in reply to admit evidence that the witness has on other occasions made statements similar to what he testified to at the trial, except when it is charged there is a disposition to misstate in consequence of a change of relation to a party or to the cause, when it may be shown that he made similar statements before such relation existed.

4. IBID.—REPLY.—Evidence that deceased had no powder burns on his hands, is competent in reply to evidence tending to show that deceased had hold of pistol when shot.

5. IBID.—RES GESTAE—DISCRETION.—Under the facts in this case, a statement of defendant to a third person, two or three minutes after the shooting and a short distance from it, held properly ruled out as not a part of the *res gestae,* the admission of which is largely within the discretion of the trial Judge.

6. MURDER—MALICE.—THE CHARGE, "in this case, if defendant intentionally, wrongfully, killed deceased without justification or excuse, then he killed him with malice, and that would constitute murder," is not on the facts, and properly defines malice and murder.

7. CHARGE complained of is not on the facts and had no tendency to impress the jury with the fact that defendant killed the deceased.

8. MURDER—ACCIDENTAL KILLING.—The defendant in a murder case is not required to establish the plea of accidental killing by preponderance of evidence, but the State must overcome such plea beyond a reasonable doubt.

Before KLUGH, J., Lexington, February term, 1903. Reversed.

Indictment against R. W. McDaniel for murder. From sentence on verdict of guilty, with recommendation to mercy, defendant appeals.

*Messrs. Efird & Dreher, G. T. Graham and Leroy F. Youmans,* for appellant.

*Mr. Graham* (oral argument).

*Mr. Youmans* cites: *As to previous statements of witness supporting present testimony:* 1 Green. Ev., sec. 469; 10 S. & R., 323; 1 Mod., 282; 2 McNally's Ev., 278; 2 Hows., 605; 12 Wend., 79; 1 Pet. C. C. R., 203; 7 S. & R., 162; 12 Hem., 95; 1 Hill Ch., 78; 3 Strob., 271; 8 Ird., 29, 324; 2 Hawks, 183, 449; 5 Ird., 203; 1 S. & R., 536; 12 Wend., 80. *As to the 7th exception:* 66 Mo., 20; 35 Mich., 18; 10 E. C. L., 323; 15 S. C., 412; 14 Rich., 253. *As to charge on facts:* 63 S. C., 446, 494; 61 S. C., 563; 25 S. C., 31; 51 S. C., 460; 53 S. C., 452; 49 S. C., 559; 32 S. C., 54; 28 S. C., 14; 31 S. C., 237, 257.

*Solicitor J. Wm. Thurmond and Mr. W. H. Sharpe,* contra. The former cites: *As to proof of reputation for drunkenness:* 29 S. C., 34. *As to cross-examination of defendant:* 36 S. C., 534. *As to proof of former statements in harmony with testimony:* 3 Strob., 271; 2 Rich., 176; 29 Ency., 1 ed., 823; 22 S. C., 40. *As to admission of cumulative evidence in reply:* 16 S. C., 495; 55 S. C., 32. *As to res gestae:* 13 S. C., 462. *As to definition of malice:* 14 Ency., 1 ed., 5; Bish. Crim. L., 7 ed., par. 429. *As to presumption of malice by proof of killing:* 29 S. C., 201; 54 S. C., 240. *As to charge not on facts:* 63 S. C., 219, 391; 61 S. C., 556. *As to proof of special defense:* 33 S. C., 117; 29 S. C., 4; 59 S. C., 229.

March 25, 1904. The opinion of the Court was delivered by

MR. JUSTICE JONES. This case was first heard at the April term, 1903, of this Court, but an order for rehearing having been made, it was heard again at the present term.

The defendant was tried at Lexington, February term,

1903, under an indictment for the murder of John L. Neece at Swansea, Lexington County, on the 24th day of December, 1902. The jury rendered a verdict of guilty, with recommendation to mercy, and sentence of life imprisonment was imposed, from which he now appeals upon exceptions to the Court's rulings as to the admissibility of testimony and charge to the jury.

The first exception alleges error in not allowing the witness, Hildebrand, to testify as to the reputation of deceased for drinking, in that one issue raised by the defendant was that deceased was a violent and treacherous man when drinking, and that he was intoxicated at the time of the difficulty. The Court did not restrict defendant in showing the reputation of the deceased for violence when drinking, and that deceased was drinking at the time of the difficulty. The reputation of the deceased for drunkenness was not relevant. In a prosecution for murder, evidence of the general bad character of the deceased is irrelevant, but evidence of his character or reputation for violence, treachery, &c., is admissible, under a plea of self-defense. *State* v. *Turner,* 29 S. C., 34, 6 S. E., 891. There was no plea of self-defense in this case; on the contrary, counsel for defendant expressly declared on trial that defendant did not plead self-defense, but plead homicide by accident.

A second exception assigns error in not allowing defendant to testify that he had received a message from the deceased concerning the discharge of blank cartridges within the corporate limits of the town on the day of the difficulty. The deceased was marshal of the town of Swansea, and it seems there was an ordinance of the town against the firing of guns within the corporate limits. The defendant kept a store in Swansea, and was celebrating Christmas eve by firing several blank cartridges from a shot-gun while standing in his store door. The homicide, whether intentional, as contended by the prosecution, or accidental, as contended by the defense, was the result of a struggle between the

defendant and the deceased, growing out of the deceased's attempt to arrest defendant for the alleged unlawful shooting of the gun. The Court ruled that defendant could not testify as to any message delivered by a third person as coming from the deceased marshal about shooting blank cartridges; but later, all objection being withdrawn, the defendant was permitted to testify fully as to the said message as received by him; and the bearer of the message, Joe Adams, testified as to the same, which was to the effect that the marshal permitted or did not object to the shooting of blank cartridges. The exception is, therefore, without foundation.

The third exception complains that there was error in allowing and compelling defendant to testify as to his action and that of the town council of Swansea in the election of a town marshal, in that said testimony showed a difference between the defendant and the town council, an entirely collateral issue, not competent in this case and prejudicial to the defendant. The solicitor, as it appears, was endeavoring, on the cross-examination of the defendant, to show that defendant had some ill will or unfriendliness to the deceased, by bringing out that defendant had tried to secure the election of another marshal at the time deceased was elected. The question propounded and admitted over defendant's objection was, "You tried to get in another marshal, did you?" The question was competent for the purpose of showing whether the relations of defendant and deceased were friendly.

The fourth exception charges error in refusing to allow defendant's witness, Redmond, to be asked on redirect examination whether his testimony at the coroner's inquest was to the same state of facts as his testimony on the trial. The solicitor had cross-examined the witness as to his statements in an affidavit used in an application for bail, with a view to show contradictory statements, and appellant contends that the testimony proposed was competent on redirect examination. It would, doubtless, be competent, after a witness has been cross-examined respect-

ing a former statement made by him, for the party who called him to re-examine him as to the same statement, as in *State* v. *Turner*, 36 S. C., 538, 15 S. E., 602; but where evidence of contradictory statements by a witness is offered by way of impeaching the witness, it is not competent in reply to offer evidence that the witness has on *other* occasions made statements similar to what he has testified in the cause. 1 Greenleaf Ev., sec. 469; 10 Ency. Pl. & Pr., 330; *Davis* v. *Kirksey*, 2 Rich., 176; *State* v. *Thomas*, 3 Strob., 269. There is an exception to this general rule, making such testimony competent when it is charged that there is a design to misrepresent in consequence of the relation of the witness to the party or to the cause, by showing similar statements made before the relation existed. 10 Ency. Pl. & Pr., 330; *State* v. *Thomas*, 3 Strob., 269. This exception to the general rule is illustrated in *Lyles* v. *Lyles*, 1 Hill Ch., 76; for in that case it was charged that the witness alleged to have made contradictory statements, had been induced to testify as he did on the trial by hope or proimse of money, and so it was competent to show in reply that the witness had been heard to make statements similar to his testimony at a time previous to the alleged improper relation to the cause. It does not appear that the present instance falls within the exception. There is no ground for a distinction in questions of this kind between testimony on re-examination after cross-examination of same witness and independent testimony. In the case of *State* v. *Gilliam*, 66 S. C., 419, 45 S. E. Rep., 6, it was held it was not competent to corroborate the testimony of defendant's witness at the trial by showing that the witness made similar statements at the coroner's inquest.

The fifth exception imputes error in allowing W. R. Barrs to testify that there were no powder burns on deceased's hands, because not in reply to any testimony offered by defendant. The defendant and one of his witnesses, Joe Adams, had testified that when the pistol fired, both defendant and deceased had hold of it, the defendant by the stock and the deceased by the barrel. The

testimony that there were no powder burns on deceased's hands had some tendency to show that deceased did not have hold of the barrel of the pistol at the time it was fired, and thus was in reply to defendant's testimony.

The sixth exception alleges error in not allowing the witness, Hildebrand, to testify to the declaration of the defendant immediately after the shooting, and in holding that the same was not part of the *res gestae.* The case shows the following in reference to this matter: "Q. Did he say anything about shooting being accidental? A. On the way to his house he did. Q. The solicitor: Only just what occurred then? A. He asked me to go home. I said for him to go home, as I thought there would be some of Neece's friends— Q. Mr. Efird: How far were you from the store when he told you this? A. We had just stepped out. Q. How long was it after shooting before you and he stepped out—how long between the shooting and the time you went out? A. It was not two minutes, I hardly think. He said, I will take your advice if you go with me; I will go if you go with me to my house, and this was before we got to the house. Q. How far from the store to McDaniel's house is it? A. About one square, two or three hundred feet. The Court: I don't think that is part of the *res gestae.*" Hildebrand had previously testified, that after the shooting he advised defendant that he had better go away to avoid further trouble, to go and tell his wife. The witness, Johnson, had testified that after the shooting he told defendant he had killed Neece, and that he had got his foot in it; and that defendant said, "No man put your hands on me;" that defendant inquired of Johnson and Hildebrand for the gun; and that Adams got the gun and gave it to defendant, who then went to his house. As stated in the case of *State v. Belcher,* 13 S. C., 463: "When the inquiry is as to a certain transaction, not only what was done but what was said by those present during the transaction is admissible for the purpose of explaining its character * * * To make declarations a part of the *res gestae,* they must be contemporaneous

with the main fact, not, however, precisely concurrent in point of time. If they spring out of the transaction, elucidate it and are made at a time so near to it as reasonably to preclude the idea of deliberate design, they are then regarded as contemporaneous." If the declarations are a mere narration of a past occurrence, they are not admissible as *res gestae.* *State* v. *Taylor,* 56 S. C., 369, 34 S. E., 939. When the declarations are not precisely concurrent with the transaction, a delicate and complex question is presented to the trial Judge in determining their admissibility, and each case must be decided upon its own circumstances. In the nature of the case, there can be no hard and fast rule as to the precise time near an occurrence within which declarations explanatory thereof must be made, in order to be admissible. The general rule is that the declarations must be substantially contemporaneous with the litigated transaction and be the instinctive, spontaneous utterances of the mind while under the active, immediate influences of the transaction, the circumstances precluding the idea that the utterances are the result of reflection or design to make false or self-serving declarations. Accordingly, in *State* v. *Arnold,* 47 S. C., 13, 24 S. E., 926, the Court held admissible as *res gestae* a statement, "Charlie shot me to death," made by a man shot in a doorway of a house from which he staggered some thirty yards and fell, the utterances being made a few minutes after the shooting, to the first persons who reached him in response to his cry for help. The declarations here in question were made probably within two or three minutes after the shooting and within two or three hundred feet of the place of the shooting. These circumstances of time and place do not alone necessarily prevent a declaration from being part of the *res gestae,* but they are factors, with other circumstances, in determining whether the declarations were the spontaneous utterances of the mind under the immediate influence of the transaction. It is to be remembered that it was in testimony that defendant did not declare that the shooting was accidental, when he saw

that Neece had been shot and when Johnson told him that he had killed Neece, and that, on the contrary, the testimony tended to show that he forbade any one to put hands on him; that he had a conversation with Hildebrand as to the advisability of going home to avoid further trouble, and inquired and secured possession of his gun before leaving the store where the shooting took place. No doubt, the Circuit Court considered that these circumstances tended to indicate a mind which was not then being actively influenced by the transaction to make explanation thereof, but rather a mind adverting to means of future safety. Questions of this kind must be very largely left to the sound judicial discretion of the trial Judge, who is compelled to view all the circumstances in reaching his conclusion, and this Court will not reverse his ruling, unless it clearly appears from undisputed circumstances in evidence that the testimony ought to have been admitted or rejected, as the case may be. Moreover, no harm arose to the defendant from the ruling, for the testimony quoted above shows that the witness was allowed to state that defendant, on the way to his house, did say something about the shooting being accidental.

The remaining exceptions relate to the charge, the seventh exception being as follows: "7. His Honor erred in charging the jury: *'In this case,* if defendant intentionally, wrongfully, killed the deceased, without any justification or excuse, then he killed him with malice, and that would constitute murder;' whereas, (1) the killing of one person by another may have been intentional and wrongful, and yet the circumstances show that the killing was not more than manslaughter; (2) this was charging on the facts." It is very clear that this charge was not in respect to matters of fact, in violation of the Constitution, as it is based upon an hypothetical statement of facts. There is no significance in the use of the words, "in this case," which was commented upon in argument. Every charge necessarily relates to the case in hand, whether the Court uses such words or not. The first specification of this exception is

based upon the view that the Court, in the charge quoted, should have used words, excluding the circumstances which extenuate an intentional homicide to manslaughter; that is, the charge should have been thus: "If the defendant intentionally, wrongfully, killed the deceased, without any justification or excuse or extenuation (as sudden heat and passion upon sufficient legal provocation), then he killed him with malice, and that would constitute murder." It must be noted here that the Court was not attempting in this part of the charge to cover the law as to an intentional homicide upon sudden heat and passion upon sufficient legal provocation. In another portion of the charge the law as to voluntary manslaughter was fully and correctly stated to the jury, and no exception has been taken thereto. The Court here was instructing the jury with reference to murder and malice as an essential ingredient. In the sentence just preceding the one excepted to, the Court said: "In its general signification, malice means the doing of a wrongful act, intentionally, without justification or excuse." This is substantially the famous definition of malice by Bayley, J., in *Bromage* v. *Proser,* 10 E. C. L., 321: "Malice in common acceptation means ill will against a person, but in its legal sense it means a wrongful act done intentionally without just cause or excuse." In *State* v. *Daig,* 2 Rich., 182, our Court said: "In law, malice is a term of art importing wickedness and excluding a just cause or excuse." There can be no doubt under the decisions in this State, that malice is presumed from an intentional killing, in the absence of facts and circumstances in evidence tending to show want of malice. *State* v. *Hopkins,* 15 S. C., 153; *State* v. *Ariel,* 38 S. C., 221, 16 S. E., 779; *State* v. *Jones,* 29 S. C., 201, 7 S. E., 296; *State* v. *Alexander,* 30 S. C., 74, 8 S. E., 440. But the Court in this case left it to the jury to decide whether the killing was intentional, and whether there was *any* justification or *excuse,* and in that event malice existed, and the killing would be murder. An intentional homicide without any excuse is certainly murder. The language, "without

any justification or excuse," not only excludes justifiable and excusable homicide, but homicide extenuated to manslaughter, because done in sudden heat and passion upon sufficient legal provocation. It must not be supposed that the word "excuse" is only applicable to excusable homicide, as homicide in self-defense. In the early stages of the common law there was ground for distinction between justifiable and excusable homicide, when the accused was not entitled to an acquittal in case of excusable homicide, but upon special verdict was entitled to pardon; but now the distinction is of no practical importance, as in both cases the accused is entitled to an acquittal, and there is no penalty whatever attaching. It would, therefore, be wrong to hold that the word "excuse" was intended by the Court or understood by the jury to be used in the absence of something which renders one *wholly excusable* or justifiable, but, on the contrary, it should be held to include also any legal extenuation of the offense charged. The dictionaries give as one definition of excuse, "a plea offered in extenuation of a fault or neglect." Bauvier's Law Dictionary says: "This word presents two ideas, differing essentially from each other. In one case, an excuse may be made in order to show that the party accused is not guilty; in another, by showing that though guilty, he is less so than he appears to be." In the case of the *State* v. *Mason,* 54 S. C., 240, 32 S. E., 357, the Court sustained a charge to the effect that malice is implied from an intentional killing, without justification or excuse.

The eighth exception complains of error in charging the jury in these words: "So if you could suppose a case where it was evident that one person had intentionally killed another, and any other fact about it was evident or known, the law would imply malice from the intentional killing," because no such presumption of malice arises where all the facts are brought out. In the opinion upon the former hearing of this case, we assumed from the context that the word "any," in the charge as above quoted in the exception, was a

misprint for "no," and held in accordance with the *State* v. *Jones,* 29 S. C., 235, 17 S. E., 296, that while the law presumes malice from the mere fact of an intentional killing, yet when the facts attending the homicide are brought out, there is no room for the presumption, and the State must prove the malice from the facts and circumstances without aid from the artificial presumption. In the application for rehearing, it was urged that the charge was printed in accordance with the "case" as agreed upon and with the copy of the stenographic notes as furnished appellant. This Court was so impressed with the impropriety of assuming of its own motion to correct the "case" as agreed upon, and the danger of injustice to litigants by establishing such a precedent, that it was induced by this circumstance, along with other circumstances, to grant a rehearing. By subsequent proceedings allowed at the instance of the solicitor, the "case" has been corrected by order of Judge Klugh, and it now appears regularly that the Circuit Judge used the word "no" instead of the word "any" in the charge to which exception was taken. So corrected, the charge is free from error under the cases cited above on this subject.

The ninth exception is as follows: "9. His Honor erred in charging the jury: 'Now, in this case, if the facts and circumstances surrounding the homicide have been brought out before you, then you look to the facts and circumstances and say whether they establish beyond a reasonable doubt the fact of malice on the part of the defendant in taking the life of the deceased, and if so, then your verdict will be guilty of murder;' the error consists: (1) in his Honor assuming and in pressing on the minds of the jury that defendant had actually killed deceased, when, under the facts in the case, defendant contended that he had not fired the pistol which killed the deceased; (2) this was charging upon the facts." It is too clear for argument that this was not a charge upon the facts, and the following extract from the charge preceding the portion complained of shows that the exception in its first specification is also with-

out foundation: "Now, in order for the State to convict a person of murder, where the plea is not guilty, as it is in this case, in the first instance, it is necessary for the State to prove beyond a reasonable doubt the material facts of the indictment. The State must, therefore, prove, first of all, that John Lee Neece is dead; that he came to his death at the hands of some person other than himself, and then must prove that this defendant killed him, and must prove that the killing was done with malice aforethought, whether the malice be express or implied malice. It is a matter for you to determine from the evidence in the case whether these facts are established beyond a reasonable doubt or not. If the State has proved the killing of the deceased by the defendant, then it becomes necessary for you to determine whether the killing was a malicious killing or not. Of course, if the State has not established the fact of the killing of the deceased by the defendant, the case falls to the ground there, and must result in a verdict of not guilty; but if you are satisfied beyond a reasonable doubt that the defendant killed the deceased, then the next inquiry is, was it done with malice aforethought?"

We next notice the eleventh exception, which assigns error "in refusing to charge defendant's second request, in that one issue raised by defendant, and which there was testimony tending to support, was that deceased attempted unlawfully to arrest defendant, and it was error not to instruct the jury as to full rights of defendant in resisting an illegal arrest." This exception fails to specify wherein the Court failed to charge the law as to arrests. The jury were instructed at length on that subject, and no exception is taken to what the Court said. The Court refused to charge the defendant's second request on the ground that it was incoherent in the form in which it was presented. The charge to the jury fully covered the right of the defendant to resist an illegal arrest, and we see no reversible error in refusing the request in the particular form presented.

The question which is deemed most serious is presented

in the tenth exception, which imputes error in charging the jury that the plea of homicide by accident is an affirmative defense, which defendant must prove by the preponderance of the evidence. In this connection the Court charged: "The defendant, in addition to the plea of not guilty, sets up the plea of accidental killing. Now, where a person comes into Court, whether in a civil or criminal case, and sets up an affirmative defense, where he comes in and says that the charge against him would be true but for certain facts which he relies upon, he must establish those facts by the preponderance of the evidence; the rule is the same in a criminal case as in a civil case; and so far as a defendant is concerned in a criminal case, the State must prove beyond a reasonable doubt its side of the case; the defendant is only required to prove by the preponderance of the evidence, which means the greater weight of evidence, the facts that he relies upon by way of excuse or justification. In this case, therefore, the defendant must establish the facts upon which the plea of accidental killing rests by the preponderance of the evidence, and if he has established his plea of accidental killing to that extent, then he is entitled to a verdict of not guilty * * *." He further charged: "So if he has established his plea of accidental killing by the preponderance of the evidence, you must find a verdict of not guilty. If you have a reasonable doubt whether he has established the plea by the preponderance of the evidence, you must give him the benefit of the doubt and find he has established it, and still find a verdict of not guilty. If he has failed to establish the plea of accidental homicide, then you disregard that plea and determine from his other plea of not guilty to the indictment, whether the State has established its case beyond a reasonable doubt or not; and if it has not, you must give him the benefit of the reasonable doubt, and find a verdict of not guilty." Then finally the Court charged: "So if you should conclude, in this case, that the defendant was resisting an unlawful arrest, or if you should conclude he was defending himself against unnecessary violence and thus

engaged in a lawful act, and that while so engaged, he unintentionally, accidentally, took the life of the deceased, that would be an accidental homicide, or a homicide by misfortune, which the law will excuse. But if the defendant has failed to show that to your satisfaction by the preponderance of the evidence, then you, as a matter of course, will disregard that plea of accidental killing and determine whether he is guilty of murder, manslaughter, or not guilty, upon the indictment and upon the plea of not guilty. Give the defendant the benefit of every reasonable doubt." We have been particular to reproduce all that the Circuit Court charged in this connection. This charge was given by the Court upon being advised by defendant's counsel that defendant plead homicide by misadventure or accident. We are not content with the conclusion which we reached in this opinion on the first hearing of this case, in overruling this exception. The rule has been established in this State that where self-defense is pleaded to an indictment, the defendant must establish it by the preponderance of the evidence, but at the same time the guilt of the accused must be made to appear beyond a reasonable doubt. *State* v. *Welsh,* 29 S. C., 4, 6 S. E., 894; *State* v. *Bodie,* 33 S. C., 132, 11 S. E., 624. Whether such a rule as applied to self-defense is sound or practically useful, we need not now inquire. If there is no distinction between self-defense and homicide by accident, when set up by plea and evidence, then, unquestionably, the Circuit Court charged the jury correctly, as he charged in accordance with the law as laid down in repeated decisions concerning self-defense as an affirmative defense. But we do not think that a defense that the homicide was accidental, is in any sense an affirmative defense. It is distinguishable from self-defense as a plea, which admits an intentional killing, and sets up as justification a necessity to kill in order to save the accused from death or serious bodily harm; whereas a defense of homicide by accident denies that the killing was intentional. In 1 Gray, 61, *Commonwealth* v. *McKie,* the logical rule is thus stated: "Where the defendant sets up no

separate independent fact in answer to a criminal charge, but confines his defense to the original transaction charged as criminal, with its accompanying circumstances, the burden of proof does not change, but remains on the government to satisfy the jury that the act was unjustifiable and unlawful." In the case of *State* v. *Cross* (W. Va.), 24 S. E. Rep., 996, the Court held that the defense of accidental killing is a denial of the criminal intent, and throws upon the State the burden of proving such intent beyond a reasonable doubt, and the accused is not required to sustain such defense by a preponderance of testimony. It was error, therefore, to instruct the jury to disregard the plea of accidental homicide, if the defendant failed to establish it by the preponderance of the evidence. It is true, the charge did finally impose upon the State the duty of establishing the charge beyond a reasonable doubt, but it will be observed that this last instruction was conditioned on defendant's failure to establish an accidental killing by the preponderance of the evidence. The error consisted in charging that the burden of proof had shifted to the defendant at all on the question whether the killing was accidental. For this material error, in an otherwise exceedingly clear and able charge, the judgment must be reversed.

The judgment of the Circuit Court is reversed, and the case remanded for a new trial.