## STATE v. MITCHELL.

1. CHARGE.—A Judge in advisiing the jury how they might weigh the testimony, or whether any force or effect should be given to contradictory testimony, charges in respect to matters of fact and commits error.

2. IBID.—CIRCUMSTANTIAL EVIDENCE.—An instruction "in other words, circumstantial evidence is strong if it shows beyond all reasonable doubt, and to the exclusion of a reasonable hypothesis of the innocence of the prisoner, that a man is guilty," is a substantial statement of the rule as to circumstantial evidence.

3. WITNESS—DEFENDANT—CROSS-EXAMINATION.—When a defendant in a criminal case goes on the stand, it is competent to ask him, on cross-examination, any question tending to test his memory or credibility.

Before BUCHANAN, J., Chesterfield, April Term, 1899. Reversed.

Indictment against W. J. Mitchell for violating dispensary law. The trial Judge instructed the jury as follows, omitting formal parts:

So, then, Mr. Foreman, the defendant is upon trial under three counts in the dispensary law. Well, the State comes here and puts the prisoner to his plea, and the prisoner puts up the plea of "not guilty," and calls upon the State to prove his guilt beyond all reasonable doubt; and the State takes that burden on herself and bears that all through the case, and the State must prove its case beyond all reasonable doubt, and every element necessary to constitute that offense. Every witness that goes on the stand is supposed to tell the truth—not because they always do it, but because that is the presumption, and because it has been adopted by the law for the reason that the majority of mankind tell the truth. It is easier to tell the truth, more natural to tell the truth, and takes less effort of the mind to tell the truth; because it has been ascertained to be the natural condition of mankind, and because, no matter how abandoned a man is, he will tell more truths than falsehoods. It is less trouble

to tell the truth than to make a falsehood, and the law clothes every witness that goes on the stand with the presumption that he tells the truth, and, therefore, you will take what he says as true, as a rule. But while that is the rule, and that is the presumption, if you see anything in his talk or in his manner, or in what he says, showing that he is not telling the truth, or in comparing his testimony with others, you see his testimony is not to be believed, why you are the sole judges of the testimony and of what you will believe. You will take his deportment on the stand. How he testified, whether hesitating, or quickly or rapidly, and so on. How he looks, how he appears. I said a few moments ago that every person was presumed to be telling the truth. It does not follow, however, that a man is not telling the truth because he differs from some other witness about some immaterial or insignificant circumstance—because, instead of its being an evidence of his telling a falsehood, it is oftentimes the strongest evidence that he has not made up a story to agree with the other witnesses and to impose on the Court. But if there be strong prominent facts in the case that every witness would see if he was there at all, and had the opportunity to see and observe; then when he swears against some one else and they differ about the prominent main features of the case, then you may say: "Well, I cannot reconcile the statement of these two men on the ground of common honesty, because this is a circumstance that everybody would see and in this particular way, and would impress him in this particular manner if he was there; and one swears one way that one thing did not occur and another that it did occur." There you may say: "Well, I am unable to reconcile those seemingly contradictory statements. I will throw them aside, and while I cannot say that one or the other speaks falsely, I will throw them out of the consideration of the case and will consider the other facts as if these two men had not sworn so and so. So you are the judges of the facts.

Evidence is divided into positive or direct evidence, as

where a man says: "I saw, or heard, or did a particular thing;" and circumstantial or the evidence inferred from the existence of something already testified to. Then you infer the existence of something else, as if when you go over newly plowed ground you see a foot track there—a long, broad track. Well, you say at once that some person passed along there. You did not see the person when he passed along there; but is it any the less certain about his passing because you did not see him? Do you not know, as well as you know anything on earth, that that person passed there? You look at the track again, and you see it is a broad track, therefore, it is a man's track, not a woman's track. If it was recently after a rain or looks fresh, you would say it had just gone along there a short while ago; and you infer that a man was there at some time and made that track, although you did not see him. Well, the rule in circumstantial evidence and positive evidence is that either is weak or strong, as it bears weakly or strongly on the matter under consideration. In other words, if the circumstantial evidence convinces your mind beyond all reasonable doubt as to the guilt of the prisoner, you may convict him. That is the same rule as to positive or direct evidence. In other words, circumstantial evidence is strong if it shows, beyond all reasonable doubt, and to the exclusion of a reasonable hypothesis of the innocence of a prisoner, that a man is guilty. I say it is evidence upon which you may act and find him guilty. In other words, while they differ in name, in effect they are the same. Both are processes by which you arrive at the truth. You have heard it said that circumstantial evidence was more to be relied upon than positive evidence, because circumstances cannot tell what is untrue. That is not the rule. If the circumstances point to the guilt of the prisoner beyond all reasonable doubt, then your verdict will be guilty. If it does not do it, then it is equally your duty to find a verdict of not guilty.

From verdict of guilty and sentence thereon, defendant appeals, alleging that presiding Judge erred:

1. In that he charged upon the facts when he charged the jury as follows: "But if there be strong prominent facts in the case that every witness would see if he was there at all, and had the opportunity to see and observe, then when he swears against some one else and they differ about the prominent main features of the case, then you may say, 'Well, I cannot reconcile the statements of these two men on the ground of common honesty, because this is a circumstance that everybody would see, and in this particular way, and would impress him in this particular manner if he was there, and one swears one way that one thing did not occur and another that it did occur.' Then you may say: 'Well, I am unable to reconcile those seemingly contradictory statements. I will throw them aside; and while I cannot say that one or the other speaks falsely, I will throw them out of the consideration of the case, and will consider the other facts as if these men had not sworn so and so.'" It appears from the testimony that there were several contradictory statements in the testimony, to wit: The testimony of D. P. Douglas and W. P. Swinnie, for the State, contradicts that of W. J. Mitchell and Nathan Blackwell, for the defense, as to whether the path from Mitchell's house led to the still stand and no further, or passed by said stand leading to another house on the opposite side of the still from W. J. Mitchell's house. Second. D. P. Douglas and W. P. Swinnie contradict W. J. Mitchell as to Mitchell's statement about the hogs near the stand on the day the raid was made, and also that there was a pile of rocks in Mitchell's field. Third. W. J. Mitchell contradicts W. R. Gainey's testimony about Mitchell's having gone to the still stand one night with a light, and next morning having sold him liquor, and in other particulars. D. P. Douglas and Mitchell contradict each other as to what Mitchell said about Jim Johnson boarding with him.

2. His Honor erred in charging, as set out in exception one above, in that he made direct reference to the testimony, and told the jury what inference to draw therefrom, which

is the exclusive right of the jury; and in stating that a witness could see the prominent main features of a case in only one way, and thereby taking from the jury the consideration of all disputed facts.

3. His Honor erred in charging, as set out in the first exception above, in that he charged on the facts and invaded the province of the jury; first, by telling them that in a case of conflict of evidence, where they could not say either was untrue and they were in doubt, they could discard all of said conflicting evidence and base their verdict on the other evidence—thus authorizing them to disregard conflicting evidence entirely, and depriving the defendant of the benefit of every reasonable doubt arising out of the testimony, being error in that respect, also, in addition to charging on the facts; and, second, in that such charge laid down to the jury a rule by which they were to weigh the evidence in a case and were to reach a conclusion thereupon, which is solely a matter for the jury.

4. His Honor erred in charging the jury that in circumstantial evidence the rule governed as in direct, to wit: that the jury be convinced beyond a reasonable doubt; whereas, the proper rule with circumstantial evidence is that the circumstances cannot be explained upon any other reasonable hypothesis than that of the guilt of the accused.

5. His Honor erred in allowing the solicitor for the State to ask and in requiring the defendant to answer the following questions: "How came you to say you had not been dealing in liquor since 1882? Don't you know that in 1883 you were indicted, and in 1884? After that, didn't you pay $200 in 1883?" In that it was an attack upon defendant's character, when same was not put in issue, and in trying to prove that defendant was guilty of the offense charged by showing that on another occasion, many years before, he had been guilty of the same offense.

*Messrs. Stevenson & Matheson*, for appellant, cite: *As to circumstantial evidence:* 40 S. C., 364; 49 S. C., 305; 35

S. C., 25.  *As to charge upon the facts:* 47 S. C., 522; 49 S. C., 305; 27 S. C., 549; 39 S. C., 294.  *Questions asked defendant by State were to establish a collateral fact, which cannot be done:* 33 S. C., 582.

*Solicitor Johnson,* contra (oral argument).

March 7, 1900.  The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER.  The defendant was tried under an indictment, containing three counts, for violating the statute usually known as the dispensary law.  In the first count, the defendant was charged with selling spirituous liquors to one W. R. Gainey, in violation of the first section of the dispensary law.  In the second count, the charge is that the defendant, with certain other persons named therein (the defendant alone being on trial), did wilfully and unlawfully maintain and keep a certain place specified, where contraband alcoholic liquors were manufactured, sold, bartered and given away, and where persons were permitted to resort to drink alcoholic liquors as a beverage, thereby keeping and maintaining a common nuisance. In the third count, the defendant, with others mentioned, did unlawfully and wilfully manufacture, sell, accept for unlawful use, and did store and keep certain contraband alcoholic liquors.  Upon this indictment the jury found the defendant guilty under the second count, and not guilty under the first and third counts.  The defendant having been sentenced, appeals to this Court upon the several grounds set out in the record, which, together with the charge of the Circuit Judge, should be incorporated by the reporter in his report of this case.

It will be observed that the first, second and third exceptions all impute error to the Circuit Judge in charging upon the facts, in the several particulars therein mentioned.  The manifest object of sec. 26, of art. V., of the Constitution is to invest the jury with the exclusive power to pass

34—56

upon the facts of the case, without any interference whatever on the part of the Judge. If there could have been any doubt upon this subject prior to the adoption of the present Constitution, such doubt is effectually dispelled by the emphatic and mandatory language used in the present Constitution: "Judges shall not charge juries in respect to matters of fact, but shall declare the law"—omitting the permission previously given in the Constitution of 1868, to "state the testimony"—which omission clearly shows that the purpose was to forbid the Judge, unqualifiedly, from charging the jury "in respect to matters of fact," and thus leaving such matters exclusively to the jury, unaided by any suggestions from the Judge. This imperative mandate, found in the organic law of the land, this Court, even if disposed to do so, cannot and will not evade the responsibility of enforcing, whenever such mandate is violated. We proceed, then, to inquire whether this mandate has been disregarded in the present case. It is apparent, from an examination of the testimony set out in the "Case," that there was direct conflict in the testimony as to several facts, which were not only "prominent" but material, and when the Circuit Judge in his charge instructed the jury as follows: "But if there be strong prominent facts in the case that every witness would see if he was there at all, and had the opportunity to see and observe them, when he swears against some one else, and they differ about the prominent main features of the case, then you may say, 'Well, I cannot reconcile the statements of these two men on the ground of common honesty, because this is a circumstance that everybody would see and in this particular way, and would impress him in this particular manner if he was there; and one swears one way that one thing did not occur and another that it did occur.' There you may say: 'Well, I am unable to reconcile those seemingly contradictory statements; I will throw them aside, and while I cannot say that one or the other speaks falsely, I will throw them out of the consideration of the case, and will consider the other

facts as if these two men had not sworn so and so.' So you are the judges of the facts"—he manifestly violated the provision of the Constitution above referred to. For it was certainly a charge *"in respect to matters of fact,"* which the Constitution expressly forbids. It is the exclusive province of the jury to weigh the testimony, and determine its force and effect, and when the Circuit Judge invaded that province and undertook to advise the jury how they might weigh the testimony, and whether any force and effect should be given to testimony which had been received as competent in a certain contingency, it undoubtedly was a violation of both the letter and spirit of the Constitution. The attempt of the solicitor to evade the force of this objection by the mere conjecture that the Circuit Judge did not mean what his language plainly imports, but that he only meant to say that, in the supposed contingency, the jury might, *temporarily,* throw aside the testimony of the conflicting witnesses, and afterwards, having considered the other facts, determine the question upon a consideration of *all* the testimony in the case, must fail, because it not only rests upon pure conjecture, but because it involves the necessity of interpolating words in the charge which are not there, and totally destroying the plain meaning of words which are there; for to give the charge the meaning suggested by the solicitor, would not only ignore but directly contradict these plain words in the charge: "I will throw them (the contradictory statements) out of the consideration of the case, and will consider *the other facts as if these men had not sworn so and so,"* which, if the English language means anything, must be regarded as meaning that the jury might utterly disregard all the conflicting testimony in the case, and form their conclusion only from the uncontradicted testimony. But we are not called upon to pass upon the correctness of the advice given to the jury, but simply whether the Circuit Judge erred in giving *any* advice or suggestion to the jury as to how they might deal with the facts; and hence we need not pursue this subject

further.    The first, second and third exceptions must, there-
fore, be sustained.

The fourth exception, which imputes error to the Circuit
Judge in one of his remarks as to circumstantial evidence,
cannot be sustained.    It is undoubtedly true that in
a criminal case the guilt of the accused may be
proved by either direct or circumstantial evidence,
and it is equally true that in both classes of evidence the rule
is the same as to the necessity of satisfying the jury beyond
a reasonable doubt of the guilt of the accused.    But the
exception seems to be aimed at the omission to state to the
jury that one of the rules as to circumstantial evidence is
that the circumstances must be such as cannot be explained
upon any other hypothesis than that of the guilt of the ac-
cused.    While it is true that this is one of the rules laid
down by standard authors, yet the practical effect of such
rule is simply to raise a reasonable doubt of the guilt of the
accused; and when the Circuit Judge said to the jury, in
speaking of circumstantial evidence: "In other words, cir-
cumstantial evidence is strong if it shows beyond all reason-
able doubt, and to the exclusion of a reasonable hypothesis
of the innocence of a prisoner, that a man is guilty," he sub-
stantially recognized the rule; and if appellant desired any
more explicit statement of the rule, he should have submitted
a request to that effect.

The fifth and only remaining exception, which imputes
error in overruling certain testimony therein referred to,
cannot be sustained.    It appears from the "Case" that the
defendant, while on the stand testifying as a witness in his
own behalf, had stated, voluntarily, that he had not sold any
liquor since 1882, and on his cross-examination,
over the objection of his counsel, he was asked this
question: "Don't you know that in 1883 you were
indicted and in 1884?" and when the objection to this ques-
tion was overruled, he was asked, "Didn't you pay $200 in
1883?" to which he replied "No, sir."    Then some record
was read to the witness, showing that he had paid $200, in

September, 1883. To which the witness replied, "I was indicted in 1882, sure." In the first place, if this were error, it was harmless, for the witness might very well have paid a fine of $200 in 1883, under a prosecution commenced in 1882. Again, the defendant was not convicted in this case for *selling* liquor, and even if he had been indicted in 1882 for that offense, and convicted and fined in 1883, we do not see how that could affect the present case. It is contended, however, under this exception, that this testimony was an attack upon defendant's character, when the same was not put in issue; and an attempt to prove that defendant was guilty of the offense charged by showing that on another occasion, many years before, he had been guilty of the same offense. As we understand it, the rule is that while a defendant in a criminal case is not compelled to testify, yet he may do so if he chooses; and when he becomes a witness, he is subject to the same incidents as any other witness; and hence his testimony may be assailed in any of the modes recognized by law.—*State* v. *Robertson,* 26 S. C., 117. There can be no doubt that it is permissible to ask a witness on cross-examination any question tending to test the accuracy of his memory or his credibility, subject to the right of the witness to decline to answer a question tending to subject him to a criminal prosecution; and this was manifestly the purpose of the question objected to, and, therefore, there was no error in overruling the objection. It does not appear that the witness declined to answer the question on the ground stated; and even if he had done so, we do not see how his answer could possibly have subjected him to a criminal prosecution for an act for which he had already paid the penalty. The fifth exception must be overruled.

The judgment of this Court is, that the judgment of the Circuit Court be reversed upon the ground first considered in this opinion, and that the case be remanded to that Court for a new trial.