STATE v. BIGHAM

(131 S. E., 603)

1. CRIMINAL LAW—TESTIMONY TO CONVERSATION BETWEEN WITNESS AND DECEASED PRIOR TO HOMICIDE, RELATIVE TO HOSTILE STATEMENT OF ACCUSED, HELD INCOMPETENT AND PREJUDICIAL.—In murder prosecution, testimony of alleged conversation between witness and deceased, in absence of accused, a few days before homicide, relative

to hostile statement alleged to have been made by accused, *held* inadmissible as hearsay and highly prejudicial; not being part of *res gestæ* or dying declaration.

2. CRIMINAL LAW—HOMICIDE—STATEMENTS OF DECEASED NOT COMPETENT, UNLESS IN DEFENDANT'S PRESENCE OR PART OF RES GESTÆ OR DYING DECLARATIONS OR AS THREATS AGAINST DEFENDANT.—Statements of deceased and declarations made by him are not competent evidence, either for or against accused, unless made in his presence, or unless they are admitted as part of *res gestæ* or dying declarations, or proved by accused as threats against him.

3. CRIMINAL LAW—WITNESSES—TRUTH AND VERACITY OF ACCUSED MAY BE IMPEACHED; STATE CANNOT ATTACK CHARACTER OF ACCUSED, UNLESS ISSUE IS FIRST TENDERED BY ACCUSED.—When accused becomes witness in his own behalf, he is subject to the usual liabilities, duties, and limitations of ordinary witness, and truth and veracity may be impeached, yet the State cannot in any way attack character of accused, unless issue is first tendered by accused.

4. CRIMINAL LAW—ACTION OF ASSISTANT STATE COUNSEL IN QUESTIONING RELATIVE TO OTHER HOMICIDES ON CROSS-EXAMINITION, NOTWITHSTANDING COURT'S RULING, HELD PREJUDICAL.—In murder prosecution, action of assistant State counsel in cross-examining accused relative to different homicides than one for which he was being tried, and persisting in such questions, notwithstanding rulings of the Court, *held* unfair and highly prejudicial.

5. CRIMINAL LAW—PERSONAL PRESENCE OF WITNESS IS REQUIRED, SO THAT ACCUSED MAY CROSS-EXAMINE.—Const. Art. 1, § 18, generally *held* to require personal presence of witness, so that accused may be able to cross-examine.

6. CONSTITUTIONAL LAW—EVERY MAN ON TRIAL IN CRIMINAL PROSECUTION IS ENTITLED TO FAIR AND IMPARTIAL TRIAL.—Under guaranties of State and Federal Constitutions, every man on trial in criminal prosecution, however humble or guilty he may be, is entitled to a fair and impartial trial.

7. CRIMINAL LAW—WITNESSES—WHEN WITNESS DIES BEFORE OPPORTUNITY FOR CROSS-EXAMINATION IS HAD, MISTRIAL SHOULD BE ORDERED.—Where witness, after having testified for the State, had died before being cross-examined, a mistrial should have been ordered, and receiving such evidence was harmful to accused.

8. WITNESSES—FAILURE TO MOVE TO STRIKE OUT TESTIMONY OF WITNESS DYING BEFORE CROSS-EXAMINATION NOT WAIVER OF RIGHT; "WAIVER."—Failure of accused to move to strike out testimony of witness who died before cross-examination was not a waiver of right to cross-examine, as waiver involves voluntary relinquishment of some known right, and, since witness died before its exercise, right was never available.

9. HOMICIDE—TESTIMONY OF PHYSICAL FACTS AT SCENE OF HOMICIDE RELEVANT, WHERE CASE WAS BUILT ON CIRCUMSTANTIAL EVIDENCE.— In murder prosecution, testimony of physical facts surrounding scene of homicide, declarations of accused, and his conduct *held* relevant and material, in view of fact that case was built on circumstantial evidence, and receiving such testimony in evidence was harmful, where witness died before opportunity to cross-examine.

10. WITNESSES—TESTIMONY IN CHIEF INCOMPETENT, WHERE RIGHT OF CROSS-EXAMINATION DENIED.—Where right of cross-examination is denied accused, whether by reason of death of witness or otherwise, his testimony in chief becomes incompetent.

11. CRIMINAL LAW—SUPREME COURT WILL TAKE NOTICE OF ERROR APPARENT ON RECORD, EVEN THOUGH NOT MADE GROUND OF APPEAL.— In a capital case, Supreme Court will take notice of any error apparent on the record affecting substantial rights of accused, even though not made ground of appeal.

12. HOMICIDE—TESTIMONY OF WOUNDS FOUND ON BODIES OF RELATIVES OF DECEASED, ALLEGED TO HAVE BEEN MURDERED AT SAME TIME, HELD ADMISSIBLE.—In murder prosecution, permitting testimony as to wounds found on bodies of relatives of deceased, alleged to have been killed at same time, *held* proper as so nearly related in point of time to homicide as would tend to throw light thereon.

13. HOMICIDE—TESTIMONY RELATIVE TO TROUBLE BETWEEN ACCUSED AND SISTER, ALLEGED TO HAVE BEEN KILLED AT SAME TIME AS DECEASED, HELD ADMISSIBLE.—In prosecution for murder of brother, where accused was, also alleged to have killed mother and sister, testimony of alleged difficulty or trouble between accused and sister shortly preceding homicide *held* admissible.

14. HOMICIDE—TESTIMONY OF CONVERSATION IN WHICH ACCUSED TOOK PART HELD NOT PREJUDICIAL.—In murder prosecution, testimony as to conversation shortly before homicide, of witness with sister of deceased, at which accused was present and took part, *held* not prejudicial.

15. CRIMINAL LAW—ADMITTING SKULL OF ACCUSED'S MOTHER, ALLEGED TO HAVE BEEN KILLED AT SAME TIME AS DECEASED, PROPER, IN VIEW OF TESTIMONY SHOWING COMPETENCY FOR PURPOSE FOR WHICH IT WAS SOUGHT.—In prosecution for murder of brother, admitting examination of skull of accused's mother, alleged to have been killed at same time as deceased, *held* proper, in view of testimony showing that it was competent to introduce skull for purpose for which it was sought to be used.

16. COURTS—HOLDING COURT MORE THAN WEEK BEYOND DAY FIXED FOR ITS ADJOURNMENT WAS NOT ERROR.—Under Code Civ. Proc., 1922, § 42, making it duty of trial Judge to continue Court until business is disposed of, holding Court for more than one week beyond date fixed for its adjournment was not error.

Before RICE, J., Horry, September, 1924. Judgment reversed and new trial granted.

Edmund D. Bigham was convicted of murder, and he appeals.

*Mr. A. L. King,* for appellant, cites: *Relevancy, evidence proving other crimes:* 88 S. C., 240; 88 S. C., 220; 88 S. C., 204; 73 S. C., 277; 168 N. Y., 264; 62 L. R. A., 299; 8 R. C. L., 199 and 206. *Admissibility of conversation to show mental condition:* 84 S. C., 530. *Testimony found prejudicial after being admitted:* 117 S. C., 44. *Prejudicial testimony stricken out; effect:* 92 S. C., 259; 32 S. C., 547. *Hearsay:* 56 S. C., 495; 56 S. C., 360; 32 S. C., 45; 2 McC., 230. *Hearsay: threats by third parties:* 70 S. C., 417. *Right to fair trial:* 104 S. C., 357, 92 S. C., 259, 91 S. C., 29; 41 S. C., 532; 8 R. C. L., 67. *Right of cross-examination:* 12 S. C., 889. *Rights of defendant not waived by silence:* 80 S. C., 98; 47 S. C., 170. *Abuse of cross-examination; poisoning jurors' minds:* 122 S. E., 494; 128 S. C., 411; 120 S. C., 214; 120 S. C., 207; 117 S. C., 76; 107 S. C., 449; 98 S. C., 117; 92 S. C., 259; 91 S. C., 29. *Duration of Court term:* Code Civ. Proc. 1922, Secs. 42 and 60; 33 Stat at Large, No. 448; 127 S. C., 96.

*Mr. Mendel L. Smith,* for appellant, cites: *Former appeal:* 119 S. C., 371. *Question proper and answer improper:* 115 S. C., 506; 79 S. C., 187. *Cross-examiner may follow lead of direct examiner:* 119 S. C., 400. *Admissibility of conversation to show mental condition:* 84 S. C., 530. *Admissibility of statements of deceased:* 120 S. E., 719; 120 S. E., 497; 56 S. C., 495; 56 S. C., 360; 32 S. C., 45; 13 S. C. L., 230; 12 Cyc., 429. *Defendant on stand subject to cross-examination:* 98 S. C., 117; 75 S. C., 494; 65 S. C., 242; 56 S. C., 524; 43 S. C., 105; 36 S. C., 534; 34 S. C., 16; 33 S. C., 582 26 S. C., 117. *Defendant alone may put his character in evidence:* 120 S. C., 205; 98 S. C., 117; 34 S. C., 16. *Questions as to other crimes:* 123 S. E., 260;

120 S. C., 205; 117 S. C., 51. *Right to be confronted by adverse witness:* Const. 1895, Art. 1, Sec. 18. *Right of cross-examination:* 83 S. C., 478; 52 S. C., 298; 2 L. R. A. (N. S.), 509; Ann. Cas. 1918-A, 234; 156 U. S., 242; 14 Enc. of Er., 578 and 584; 12 Cyc., 543; 22 C. J., 432. *Dying declarations:* 38 S. C., 258; 35 S. C., 197; 12 S. C., 89; 223 U. S., 500; 30 C. J., 253; 40 Cyc., 2473. *Right to fair trial:* 130 S. C., 411; 124 S. E., 81; 122 S. E., 494; 120 S. C., 214; 117 S. C., 76; 107 S. C., 449; 104 S. C., 357; 91 S. C., 29; 12 S. C., 89. *Testimony in chief incompetent where cross-examination denied:* 43 N. Y., 508; 42 Mich., 361; 40 Cyc., 2479; 1 Starkie on Evidence, 61; Best on Evidence (Wood's Ed.), Sec. 496; 1 Greenleaf on Evidence, Sec. 163; 1 Wharton on Evidence, Sec. 197. *Improper probative testimony presumed prejudicial:* 117 S. C., 51. *Failure of attorneys to move to strike testimony:* 117 S. C., 51; 12 S. C., 89. *Error in admission of evidence not cured by withdrawal:* 124 S. E., 81; 233 F., 201; 147 C. C. A., 207; 38 Kan., 71; 15 P., 874; 32 N. Y., 48; 10 N. Y. S., 105; 160 Mich., 7; 124 N. W., 536; 136 A. S. R., 414; 37 Tex. App., 40; 83 S. W., 56. *Court will take notice of errors of record prejudicing accused:* 124 S. E., 81; 121 S. E., 621; 117 S. C., 51; 48 S. C., 147; 36 S. C., 542; 27 S. C., 614; 16 S. C., 442; 13 S. C., 455; 12 S. C., 89.

*Messrs. L. M. Gasque, Solicitor,* and *Phillip H. Arrowsmith,* for respondent, cite: *Former appeals:* 123 S. C., 411; 119 S. C., 368. *Evidence of other crimes:* 125 S. C., 406; 88 S. C., 204. *Admissibility of conversation to show mental condition:* 84 S. C., 529. *Questions as to other crimes to test veracity of witness:* 73 S. C., 389. *Improper question ruled out harmless:* 125 S. C., 254. *Cross-examination made impossible:* 12 S. C., 889; 15 L. R. A. (N. S.), 493. *Duration of Court term:* Code Civ. Proc. 1922, Sec. 42.

February 1, 1926:

The opinion of the Court was delivered by MR. JUSTICE. WATTS.

The defendant was indicted for the murder of his brother,. L,. Smiley Bigham. The homicide occurred in Florence County on the 15th day of January, 1921. At the same time Mrs. M. M. Bigham, the mother, Mrs. Margie Black,. the sister, and her two adopted sons, John and Leo Mc- Cracken, were also slain. The defendant was arrested on. January 20, 1921, on warrants charging him with the murder of all of these parties. At the March term, 1921, of the Sessions Court of Florence County, he was indicted by the grand jury for their murder, and at the same term of Court went to trial under the bill charging him with the murder of his brother, Smiley Bigham.

.Upon that trial he was convicted and sentenced to suffer death by electrocution. He then applied to be released on *habeas corpus,* alleging as his ground the sentence to be unlawful, as the Court had held over beyond Saturday of the week allotted. This petition was denied. He then prosecuted his appeal to this Court for a general review, and the conviction was sustained. *State v. Bigham,* 119 S. C., 368; 112 S. E., 332. He then applied for a new trial on after-discovered evidence, which was refused, and the refusal was affirmed on appeal. *State v. Bigham,* 123 S. C., 411; 117 S. E., 57. He then applied to this Court for leave to move on Circuit for a new trial on after-discovered evidence and upon the further ground that he had been the victim of a "mob trial." Leave was granted, and his Honor,. Circuit Judge John S. Wilson, granted the motion. A change of venue was had on the motion of the defendant,. unopposed by the State, and the case was retried at Conway,. in Horry County, before his Honor, Circuit Judge H. F. Rice, and a jury. He was again convicted, again sentenced to suffer death by electrocution, and again appealed.

One of the group of exceptions complains that it was error to allow Mrs. Ola Kirton to testify (over objection) for the State on her direct examination, to an alleged conversation between L. Smiley Bigham, the deceased, and herself, the defendant not being present, on Tuesday before the homicide on the following Saturday, relating to a hostile statement alleged to have been made by the defendant to the deceased at some previous time, not designated. The testimony was purely hearsay; it did not come within the exceptions to the universally sanctioned rule excluding such testimony; it was completely at variance with the decided cases in this State on the subject, and highly prejudicial.

The witness was allowed to testify to this conversation, both at this trial and the former trial. *State v. Bigham,* 119 S. C., 371; 112 S. E., 332. The admission of this testimony was made the ground of the eighth exception in the appeal to this Court from the judgment pronounced against him at that trial. Appellant's counsel, Mr. Smith, has this to say in his points and authorities, which embodies what was done in that appeal and the decision of the Court (his statement is correct) :

"In disposing of the exception contrary to the contention of the defendant, the Court, Mr. Justice Gary delivering the opinion, held, in substance, (1) that the *question* propounded was not objectionable, and a motion should have been made to strike out the *answer* if it were regarded as inadmissible and not responsive to the ruling of the Court (citing *State v. Mills,* 79 S. C., 187; 60 S. E., 664, and *State v. Bing,* 115 S. C., 506; 106 S. E., 573) ; and (2), that no ground of objection to the testimony was stated. (*State v. Bigham,* 119 S. C., page 396; 112 S. E., 332.) When this opinion was rendered the Court was composed of only four members. Mr. Justice Cothran concurred in the opinion, and the lamented Justice Fraser filed a separate concurring opinion. Mr. Justice Watts did not participate

in the decision on account of illness. In discussing the exception, Mr. Justice Fraser declared:

" 'As to the statements made by the deceased: A witness was permitted to say the deceased said: "He is kind of cutting up some with us; he has had his share, but I am going to give him a piece of the land if he will behave himself. He is talking about killing us all, but I am not afraid of him." Ordinarily that is incompetent, clearly so. Much depends on the surroundings. The theory of the defendant was that Smiley was a crazy man. The only way ordinary people can judge of a man's sanity is from what he says and does. The defendant, on the cross-examination, had been allowed to prove Smiley's actings and sayings, and I cannot say it was reversible error to allow the State to follow the defendant's lead on the redirect examination.' *State v. Bigham,* 119 S. C., 400; 112 S. E., 342.

"It will, therefore, be noted that the direct question of the competency of this testimony was not determined by a majority of the Court; and such testimony was sustained by Mr. Justice Fraser upon the ground that he could not say that its admission 'was reversible error,' although ordinarily clearly incompetent, when the State on the redirect examination only followed the defendant's lead on the cross-examination."

The question is now presented squarely to the Court, whether the testimony was competent or not. Specific objection was made that it was not competent, that the defendant was not present at the time the alleged conversation between the witness and deceased was had, and such statements were not a part of the *res gestæ* or a dying declaration. In no view of the case was it admissible, according to my view; it was clearly incompetent and highly prejudicial.

It is different at this trial and the former trial. At this time objection was made promptly, and a motion to strike out the answer was made and refused by the Court. Even

if the question of sanity was at issue, the State did not bring itself within *State v. Driggers,* 84 S. C., 530; 66 S. E., 1042; 137 Am. St. Rep., 855; 19 Ann. Cas., 1166. Here the witness was allowed to detail the conversation with the deceased on Monday before the homicide on Saturday; the defendant not being present, showing threats and a hostile attitude on the part of the defendant, and the alleged conversation not being a dying declaration or a part of the *res gestæ.* The alleged conversation was a statement made by the deceased when he was not even under an oath.

The statements of the deceased, and declarations made by him, are not competent evidence either for or against the accused, unless made in his presence or unless they are admitted in evidence as part of *res gestæ* or dying declarations or proved by the defendant as threats against him. 12 Cyc., 429. *Nettles v. Harrison,* 2 McCord, 230. *State v. Wyse,* 32 S. C., 45; 10 S. E., 612. *State v. Taylor,* 56 S. C., 360; 34 S. E., 939. *State v. Allen,* 56 S. C., 495; 35 S. E., 204. *State v. Goodwin,* 127 S. C., 107; 120 S. E., 496. The admission of such testimony was contrary to the decisions in this State.

In the case of the *State v. Goodwin, supra,* the Court, Mr. Justice Cothran delivering the opinion, recognizes the long-established rule in declaring:

"The testimony of the Sheriff and that of the Magistrate as to the declarations of the deceased complaining of the conduct of the defendant and applying for a peace warrant were clearly inadmissible as hearsay."

In the *Goodwin Case* the defense was an alibi, just as in this case. If the contention (not a defense, as no such affirmative burden rested on the accused) had been that Carter, the deceased, had killed himself through an insane impulse, would this fact have converted the inadmissible and hearsay statements of the deceased complaining of the conduct of the defendant into competent evidence? Such a contention is preposterous.

The principle announced in the case of the *State v. Underwood,* 127 S. C., 1; 120 S. E., 719, leads more strongly to a similar conclusion. In that case, a prosecution for murder, one witness was allowed to testify on cross-examination that another witness told her that the defendant had made a threat to kill the deceased. Such testimony was held incompetent and prejudicial.

The exceptions raising this question are sustained.

The second group of exceptions assign error in that there was a highly prejudicial abuse of the right of cross-examination by counsel, who assisted the State in the prosecution, and a failure on the part of the trial Judge to require the said attorney to desist in asking questions on cross-examination of the defendant, which were in utter disregard of his Honor's ruling, and in not giving to the defendant, in violation of his sacred, constitutional rights, any protection or security whatever against an obviously unfair and unlawfully conducted cross-examination, persistently pursued in utter disregard and defiance of the rulings of the Court. The following took place:

"Q. Wasn't that man killed by driving a nail in his ear and being shot in the head? A. Dr. Finklea can answer that question; I can't.

"Q. Do you refuse? A. No; I don't know.

"Q. Didn't you drive that nail in that man's head? Didn't you kill that man by driving that nail in his head? A. No; I didn't. (Objected to as improper and irrelevant. Objection was sustained.)

"Mr. Smith: I would like for your Honor to instruct the jury to disregard that question.

"The Court: I have sustained your objection, and I instruct the jury that that means, gentlemen of the jury, that that matter is not before you, and, of course, you are not to consider it.

"Q. I ask you whether or not you were involved in a murder case in Georgia? A. As a State's witness.

"Q. Did you succeed in convicting the man you testified against? (Defendant's counsel objected to any further examination along that line.)

"The Court: As I understand it, you asked him if he succeeded in convicting the man he testified against, or if the man was convicted. The question is improper, and I sustain the objection.

"Q. While you were in the death cell in Columbia, didn't the wife of that man come to you in Columbia and beg you to confess that you killed that man? A. No.

"Q. Didn't she come to you in the County jail in Florence?

"Mr. Smith: We object on the ground that that line of examination is wholly and entirely irrelevant and improper and utterly unbecoming in any lawyer in South Carolina to stand up before a jury and attempt to prejudice the jury against a man tried for his life in any such manner as that. It is an effort to assault the character of this witness before that jury, when he alone is the only man that can put his character in issue.

"Mr. Arrowsmith: It is for the purpose of testing the credibility of the witness. What I want to ask him is, if while he was confined in the jail at Florence, didn't friends of the man he testified against in Georgia come to him and beg him to admit his guilt.

"The Court: Mr. Arrowsmith, I have sustained the objection to that question.

"Q. Were you not the last person seen with the man that was killed, according to the testimony? A. I was not. There was an eyewitness that saw it.

"Q. That is all the murder cases I have to inquire about."

While the rule is well established in this State that, when the defendant becomes a witness in his own behalf, he is subject to the usual liabilities, duties, and limitations of ordinary witnesses, and his truth and veracity may be impeached in a proper way. *State v. Rob-*

*ertson,* 26 S. C., 117; 1 S. E., 443. *State v. Wyse,* 33 S. C., 582; 12 S. E., 556. *State v. Merriman,* 34 S. C., 16; 12 S. E., 619. *State v. Freeman,* 43 S. C., 105; 20 S. E., 974. *State v. Mitchell,* 56 S. C., 524; 35 S. E., 210. *State v. Williamson,* 65 S. C., 242; 43 S. E., 671. *State v. Rowell,* 75 S. C., 494; 56 S. E., 23. *State v. Knox,* 98 S. C., 117; 82 S. E., 278, and the *State v. Frierson,* 132 S. C., 362; 128 S. E., 709, recently filed, which confirms the principles announced in the cases *supra,* yet it is a primary principle in criminal procedure that the State cannot in any way attack the character of the defendant, unless that issue is first tendered by the defendant. *State v. Knox, supra. State v. Frierson, supra. State v. Ashley,* 128 S. C., 411; 123 S. E., 260.

It is true that his Honor excluded the evidence; yet he allowed the State's attorney to persist in asking questions which were in conflict with his Honor's ruling.

The action of the assistant State counsel was highly reprehensible, and deserves the highest condemnation and censure; his Honor should have stopped and required him to adhere to the rulings of the Court. The attorney disregarded and practically defied the rulings of the Court, and should have been stopped and brought up and made to respect the rulings of the Court. He, by his disregard of his Honor's ruling, nullified the effect of the Court's ruling by his persistent and repeated violations of the same. He should have been brought up in short order and made to conform to the Court's ruling.

The defendant was on trial for killing one person, yet every detail of the five homicides was presented to the jury, even to the skull of his mother. The defendant was not being tried for killing her, but was being tried for killing L. Smiley Bigham. Yet the defendant was held up and asked if he was not the real murderer of the Negro through the fiendish act of driving a nail in his head with which his brother, Smiley, was charged, tried, and acquitted, or that

he was the real murderer of a man in Georgia, for which another man through his perjured testimony was an innocent sufferer, emphasized by the fact that people, fixed in their belief, had journeyed to the jail from Georgia to the death house to secure from him a confession of his guilt; and the examination was wound up by the statement on the part of the assistant State's attorney that those were the murder cases that he cared to ask the defendant about, possibly leaving the impression on the jury that there might be more murder cases that the defendant was mixed up in, or had guilty knowledge of.

We think it a pity that the very capable and high-minded Solicitor could not have conducted the whole examination of the witnesses. We feel assured that if he had been able to do so no such exceptions as are presented by these exceptions would have been necessary; but the case was started on the 25th of September and ended on the 7th of October. It was both fatiguing and taxing to the whole Court, including the attorneys.

The attorneys employed usually to assist the state are zealous and vigilant, and frequently in their zeal make mistakes that the solicitor does not. The cross-examination was not competent; it was unfair; in violation of the rulings of his Honor; and most deeply and highly prejudicial to the defendant.

The defendant was practically on trial for killing five members of his family, although really on trial as charged for killing his brother, Smiley Bigham. He was under the Constitution entitled to a fair and impartial trial; the action of the assistant state counsel in the cross-examination of the defendant was insinuating, suggestive of other murders, unfair, in violation of the rulings of his Honor and in violation of the decisions of this Court. While His Honor ruled the questions incompetent, yet he allowed other questions to be asked that conveyed to the jury the impression

that the defendant was a wholesale murderer, "with blood on his hands, and panting for more," as it were.

Upon the whole record, I am clearly of the opinion that these exceptions should be sustained.

The third group of exceptions are:

"(3) That the failure of the defendant to have an opportunity to cross-examine the witness, George J. Steele, who died on the stand, after giving damaging testimony against him on the direct examination, said right, not being waived by the defendant and the loss thereof not due to any fault of his whatsoever, was a denial of rights guaranteed to him by the State and Federal Constitutions, and deprived him of due process of law and a fair and impartial trial." Exceptions 31-34.

Article 1, § 18, of the State Constitution provides:

"In all criminal prosecutions the accused shall ˉenjoy the right * * * to be confronted with the witnesses against him."

This constitutional provision is generally held to require the personal presence of the witness so that the accused may be enabled to cross-examine him. 12 Cyc., 543; *22* C. J., 432, notes; 14 Ency. of Er. 578; *Ralph v. State*, 124 Ga., 81; 52 S. E., 298; 2 L. R. A., (N. S.), 509; 4 Ann. Cas., 501. *Territory v. Curran,* 23 Haw, 421; Ann. Cas. 1918A, 234. *Mattox v. United States,* 156 U. S., 242; 15 S. Ct., 337; 39 L. Ed., 409. *State v. Weil,* 83 S. C., 478; 65 S. E., 634; 26 L. R. A. (N. S.), 461. In the latter case our Court, at page 481 (65 S. E., 635), thus states the object of this provision:

"The object of this provision was to prevent the use of affidavits or ex parte depositions against a prisoner in lieu of a personal examination of the witness in the presence of the prisoner and subject to his right of cross-examination. *Mattox v. United States,* 156 U. S., 242 [15 S. Ct., 337; 39 L. Ed., 409]."

It is universally held that the admission of the dying declaration is not violative of this right, for the reason most generally assigned that the accused is confronted with the witness who testifies thereto (30 C. J., 253). Nor is it violated in those jurisdictions where the previous testimony of witnesses who have died or become insane is received, because the admission thereof is limited to those cases where the accused has had the opportunity to cross-examine. 12 Cyc., 544; 14 Ency. of Er., 584.

It is uniformly held that the constitutional right to cross-examine, unless waived (12 Cyc., 545; 14 Ency. of Er., p. 586. *Diaz v. United States,* 223 U. S., 442; 32 S. Ct., 250; 56 L. Ed., 500; Ann. Cas. 1913C, 1138), cannot be denied (40 Cyc., 2473. *State v. McNinch,* 12 S. C., 89. *State v. Howard,* 35 S. C., 197; 14 S. E., 481. *State v. Head,* 38 S. C., 258; 16 S. E., 892). In none of our cases is the sanctity of this right more forcefully stated than by the learned jurist, the late Mr. Chief Justice McIver, in the case of *State v. McNinch, supra,* at pages 96, 97, when he declares :

"But the right to cross-examine is one which must remain inviolate. To take it away would render almost valueless the constitutional right 'to meet the witnesses against him face to face.' Const., Art. 1, § 11 [Section 13]. It is the law of evidence that, 'when a witness has been examined in chief, the other party has a right to cross-examine him.' 1 Greenleaf, Evidence, § 445. 'The power of cross-examination has been justly said to be one of the principal, as it certainly is one of the most efficacious, tests which the law has devised for the discovery of truth.' Id., § 446. \* \* \* One of the most inestimable rights by which a man may maintain his defense."

In the case of the *State v. Howard, supra,* the judgment was reversed because the accused was denied the right to cross-examine two of the State's witnesses on the whole case, which error was not cured by the

defendant afterwards calling these witnesses to the stand and examining them in his own behalf. The rule in this State is, at page 201 (14 S. E., 482), declared to be that—

"A witness may on his cross-examination be interrogated as to any fact pertinent to the case, 'whether the examination be directed to qualify, neutralize, or discredit the testimony which the witness may have given in his examination in chief, or to lay the foundation for his defense in any new matter in the knowledge of the witness.' "

It certainly will not be questioned for a moment that under the guaranties of State and Federal Constitutions every man on trial in a criminal prosecution, however humble or guilty he may be, is entitled to a fair and impartial trial. *State v. McNinch, supra. State v. Weldon,* 91 S. C., 29; 74 S. E., 43; 39 L. R. A. (N. S.), 667; Ann. Cas. 1913E, 801. *State v. Bethune,* 104 S. C., 357; 89 S. E., 153. *State v. Gens,* 107 S. C., 449; 93 S. E., 139; L. R. A. 1918E, 957. *State v. Gossett,* 117 S. C., 76; 108 S. E., 290; 16 A. L. R, 1299. *State v. Harrison,* 120 S. C., 214; 112 S. E., 926. *State v. Griffin,* 129 S. C., 200; 124 S. E., 81; 35 A. L. R., 1227. *State v. Barker,* 128 S. C., 372; 122 S. E., 494. *State v. Ashley,* 128 S. C., 411; 123 S. E., 260

This Court has decided that in a capital case the jury must be composed of 12 jurors, and no waiver, however solemn, on the part of the defendant is binding.

If the evidence of the witness, George Steele, given at the former trial had been read, by direct and cross-examination, it would have been all right. If a juror had died, the Judge would have had to order a mistrial. When the witness, Steele, died, after giving his evidence in chief, and the defendant was deprived of the right to cross-examine him, the Judge should have ordered a mistrial. The Judge was not responsible for his death. That was an act of God. The evidence was harmful to the defendant; his right was not waived to cross-examine him.

The defendant did not waive his right to cross-examine by reason of the fact that he made no motion to strike out Steele's testimony nor made a motion for a mistrial. He had no opportunity to cross-examine the witness—could not, for the witness died.

(3) That he did not and could not waive this right in the usual way of declining to avail himself of it, for the obvious reason that waiver involves the voluntary relinquishment of some known right which is at the time available, but when the witness died before its exercise the right was never available; (4) that the testimony given by the witness in chief was material and damaging in some phases under the Court's rulings; and (5) it is possible that a cross-examination might have weakened or lessened, if not overthrown, its effect upon the jury.

The first three questions are so self-evident as to make further comment unnecessary.

Was the testimony of the witness in chief material and damaging? An analysis of this testimony shows that it related to: (1) The physical facts and circumstances surrounding the scenes of the homicides at the house; (2) the relations of the members of the family; (3) knowledge of family; (4) declarations of the accused; and (5) conduct of the accused. Such testimony, under the ruling of the Court, was relevant and material, especially in view of other testimony offered, and the fact that the case of the State was built on circumstantial evidence alone. The defendant lost the right of cross-examination of Steele through no fault of his. In *State v. McNinch,* 12 S. C., 89, we find the following:

"The witness, Grimes, was presented by the State, and was examined by Mr. Garlington [of counsel for the State]. His answers to the first questions attracted my attention. I suspected he was intoxicated. * * * The examination proceeded until, I think, the counsel, the jury, and the bar came to the same conclusion, when Mr. Garlington proposed

to withdraw him, in which I acquiesced. The defense claimed the right to cross-examine, which was admitted by the Solicitor. The presiding Judge said: 'Of course you have the right to cross-examine, but I do not see the use of continuing the examination in his present condition; he may be recalled, either to resume his examination in chief or to cross-examine, as may be desired by the prosecution or the defense.' The witness was withdrawn, after some consultation between the counsel for the defense, and was not recalled by either side. No exception was taken, and the right to cross-examine not denied."

In passing upon the question on appeal, this Court said:

"The presiding Judge could neither 'take away from the jury the testimony already given, nor could he deprive the accused of the right to immediately cross-examine. * * * The fact that the appellant was deprived of his right to cross-examine the witness before his removal and withdrawal is not contained in the grounds of appeal, but is in the report of the Judge. It is urged that the appellant had thus waived his right to appeal from such action of the Court below. The same rule does not apply in this respect to civil actions and to trials involving human life. *This Court is bound, in a capital case, to take notice * * * of any error appearing upon the record by which the prisoner has been deprived of any of the substantial means of enjoying a fair and impartial trial.'*

"As already indicated, it was not the province of the Judge to decide that the witness was drunk, nor was it proper to decide that the evidence was immaterial and must be withdrawn. The evidence related to the question in issue, and could not, in a proper sense, be called immaterial; while its materiality, as measured by its weight or value, was a question solely for the jury. Either of the reasons would give sufficient ground for a new trial. *But the right to cross-examine is one which must remain inviolate.* To take it away would render almost valueless the constitutional right

'to meet the witnesses against him face to face.' The law is too plain to require authority. The prisoner was practically deprived, though, doubtless, unintentionally so, of the right to cross-examine the witness produced against him—one of the most inestimable rights by which a man may maintain his defense."

The case of *State v. Cason,* 41 S. C., 532; 19 S. E., 918, presented a situation which, in effect, was analogous to the one found here. In that case the defendant was indicted for larceny of live stock; was found guilty and sentenced by his Honor, Judge Watts, to three years in the penitentiary. In the report of the case the following is shown:

"After the jury had been impaneled and sworn, a juror, D. M. Milling, arose and said to the Court: 'Your Honor, I do not think I am competent to sit on this jury. I have heard my brother-in-law talk about the case, and I have formed and expressed an opinion.' "

To which the Court replied:

"Could you not render a verdict, according to the evidence, independent of any opinion you may have formed already?"

To which the juror replied:

" 'That is just what is troubling me.' His Honor thereupon held that the jury had passed beyond his jurisdiction, and that he could do nothing but proceed with the trial."

It does not appear that any motion of any kind was made by the defendant, either at that time or after the verdict and sentence. Yet, upon appeal, this Court held:

"But we cannot doubt that the Circuit Judge had jurisdiction, which gave him the authority to control the matter and secure a fair and impartial jury for the trial of the defendant. The laws of the State are very tender of the character and liberty of the citizen, and guard with greatest care the organization and composition of juries, * * * especially in criminal cases."

It rested on the Court to protect the rights of the accused on trial in all of his constitutional rights.

The jury in capital cases shall be composed of twelve; the Constitution says that the accused shall have the right to cross-examine all witnesses against him. The defendant was not allowed this right because the witness died on the witness stand. The defendant was not accorded a trial as the Constitution allows. It was the duty of the Court to act and not wait for a motion from the defendant. The defendant waived no right, and the conviction of the defendant was illegal and should be set aside.

Where the right of cross-examination is denied the accused, whether by reason of death of the witness or otherwise, his testimony in chief becomes incompetent. 40 Cyc., 2479; 1 Starkie, Ev., 61, 62; Best's Evidence (Wood's Ed.), § 496; 1 Greenleaf on Ev., § 162; 1 Wharton on Ev., § 197; *People v. Cole,* 43 N. Y., 508; *Sperry v. Moore's Estate,* 42 Mich., 361; 4 N. W., 13. It was prejudicial under *State v. McNinch, supra; Templeton v. Railway Company,* 117 S. C., 51; 108 S. E., 363; *Oates v. United States,* 233 F., 201; 147 C. C. A., 207; *Whittaker v. Voorhees,* 38 Kan., 71; 15 P., 874; *Elliott v. Ferguson,* 37 Tex. Civ. App., 40; 83 S. W., 56.

We repeat what was said in the case of *State v. McNinch,* 12 S. C., *supra.* The fact that this witness was not cross-examined was *not* made the basis of an exception on appeal. It was contended that the right had been *waived.* The Court held as follows:

"The same rule does not apply in this respect to civil actions and to trials involving human life. This Court is bound, in a capital case, to take notice, in behalf of the accused, of any error apparent upon the record by which the prisoner has been deprived of any of the substantial means of enjoying a fair and impartial trial."

And the judgment was reversed mainly upon a denial of the right to cross-examine the witness. This case has not been overruled, but, on the contrary, has been cited with

approval in a number of cases, and was relied on by the Court as late as August 13, 1924, in extending the principle of practice above set out to all cases of felony. *State v. Griffin,* 129 S. C., 200; 124 S. E., 81; 35 A. L. R., 1227.

It is not an open question any longer that in a capital case this Court will take notice of any error apparent on the record affecting the substantial rights of the accused, even though not made a ground of appeal. *State v. McNinch, supra. State v. Washington,* 13 S. C., 455. *State v. Dodson,* 16 S. C., 453. *State v. Davis,* 27 S. C., 614; 4 S. E., 567. *State v. Turner,* 36 S. C., 542; 15 S. E., 602. *State v. Green,* 48 S. C., 147; 26 S. E., 234. *State v. Griffin,* 129 S. C., 200; 124 S. E., 81; 35 A. L. R., 1227.

This exception is sustained.

The exceptions alleging error on the part of his Honor in not directing a verdict in favor of the defendant as asked for, are overruled as being without merit. Inasmuch as I think there should be a new trial, the other exceptions are not considered by me.

The third group of exceptions in the opinion should be sustained, the judgment reversed, and a new trial granted.

Mr. CHIEF JUSTICE GARY, Mr. JUSTICE COTHRAN and Mr. ACTING ASSOCIATE JUSTICE R. O. PURDY concur.

Mr. JUSTICE MARION concurs in result.

Mr. JUSTICE MARION (concurring specially): The task of reaching a conclusion, satisfactory to myself in this case, has given me great difficulty. After a painstaking examination of the record and careful consideration of the question raised by the appeal, I am constrained to concur in the result of the opinion of Mr. Justice Watts.

Unquestionably, for reasons of public policy—as obvious as they are weighty—which may not properly be ignored by the Courts in the administration of justice, this judgment ought to be affirmed, if that result could be reached consistently with a sound and fair determination of the ques-

tions of law raised by the appeal. In the determination of those questions it is to be borne in mind that in a case of this kind the Supreme Court by constitutional limitation is a Court for the "correction of errors of law" only; and, under the settled principles of our jurisprudence, where an appellant can show that prejudicial error of law has been committed in the course of his trial in the Court below, he is of right entitled at the hands of this Court to a reversal of the judgment appealed from and to a new trial of his cause.

I am unable to resist the conclusion that the admission of the testimony of Mrs. Ola Kirton as to the declaration of the deceased, Smiley Bigham, made to her, in the absence of the defendant, on the Tuesday before the homicide on the following Saturday, must be held for prejudicial error of law, and upon the ground that the appellant's exceptions directed to that contention should be sustained. I concur in the result of the opinion of Mr. Justice Watts. Unless the admission of this declaration of the deceased can be sustained under some established exception to the hearsay rule of evidence—a rule sanctioned and applied in all jurisdictions wherein the principles of the English common law are recognized and enforced—the admission of Mrs. Kirton's testimony was clearly erroneous. After a careful study of the question involved, I am not satisfied that the admission of this testimony can soundly be justified under any recognized exception to the hearsay rule. Since an adequate statement of the reasons for that view would involve a somewhat extended technical discussion, directed to the demonstration of a proposition whose validity is already conceded by a majority of this Court, and would detail further delay in the disposition of the appeal, I shall undertake no extended discussion of the point involved. It is sufficient to say that under no established exception to the hearsay rule, which could possibly be invoked here, does the law permit the extrajudicial statement of a person, when admitted in evidence, to be used testimonially; that is, as

evidence establishing or tending to establish the truth of
the fact or facts asserted by the declarant. Thus the admis-
sibility of such a statement under the exception to the
hearsay rule applied by the learned Circuit Judge in this
case, viz., that, where the condition of mind of the declarant
is an issuable fact his declarations may be admitted to show
what that condition of mind was, obviously depends upon
whether the fact that the particular declaration was made
has any logical tendency to establish what the condition of
the declarant's mind was in so far as such state of mind was
involved as an issuable fact in the case. This declaration
of the deceased, Smiley Bigham, to Mrs. Kirton was ad-
mitted by the trial Court solely upon the ground that it had
some probative force to rebut the defendant's contention of
fact that Smiley was insane. But the mere fact that Smiley
said, several days before the homicide, that the defendant,
Edmund, had been threatening to kill the whole Bigham
family, could have no probative force to establish his sanity,
unless what he said was true. If what he said was true, his
statement was rational and to the same extent as any other
rational remark made to Mrs. Kirton might be said to have
some slight relevancy upon the issue of his sanity; if what
he said was untrue, the making of such a declaration could
have no logical tendency whatever, so far as I can perceive,
to rebut the contention that he was insane. The declara-
tion, therefore, could have no possible relevancy for the pur-
pose it was admitted without first assuming that the state-
ment of fact embodied therein was true, and such assump-
tion obviously would directly involve the *testimonial* use of
the declaration forbidden by the hearsay rule and completely
shatter the theory of the exception invoked to sustain its
admission, viz., that the fact that the declaration was made
was, in itself, a relevant circumstance regardless of its truth
or falsity.

In this connection I deem it proper to say that I have not
overlooked the cogent reasons that exist for the creation of

a general exception to the hearsay rule, which would make testimony of this character—that is, "the statement of a deceased person who had competent knowledge and no apparent interest to deceive"—admissible in evidence for testimonial use; and I am inclined to agree with Professor Wigmore that "such an exception to the hearsay rule commends itself as a just addition to the present sharply defined exceptions, and foreshadows undoubtedly the enlightened policy of the future." Section 1576, Wigmore on Evidence (1st Ed.). But no such exception now exists and for this Court to create such an exception for the purposes of this appeal would be in the nature of an *ex post facto* ruling—a ruling which, in this case, certainly, I do not think may be justly enunciated and applied.

If the admission of this testimony was erroneous as a matter of law, the only escape from the conclusion that the appellant is entitled to a reversal lies in holding that the error was not prejudicial. As above indicated, the alleged declaration of the deceased, Smiley Bigham, to which Mrs. Kirton testified, was to the effect that the defendant, Edmund Bigham, had been making threats to kill the whole family. The vital relevancy of the fact—if it was a fact—that the defendant had made the threats said to have been attributed to him by the deceased, is apparent. The State's theory of the case was that the defendant had done exactly what the deceased was said to have declared the accused had threatened to do. Since, as I have indicated, the admission of this declaration inevitably involved its use testimonially (that is, as evidence establishing, or tending to establish, the truth of the declarant's assertion that such threats had actually been made), the prejudicial effect of this testimony would seem to be too clearly apparent to require argumentative discussion. It touched directly the very nerve of the case. In that view, I know of no principle of our criminal jurisprudence which would justify this Court in pronounc-

ing the error harmless and in affirming the judgment on that ground.

The other exceptions sustained in the leading opinion, in my judgment, are of doubtful merit. The defendant's objections to certain questions propounded by State's counsel upon the cross-examination of the defendant, which objections constitute the basis of these objections, were all sustained by the trial Court. I am not prepared to say that in the handling of the somewhat difficult situation brought about by the persistence of State's counsel in the line of cross-examination, to which these objections had been made and sustained, the Circuit Judge was guilty of such an abuse of discretion in the conduct of the trial—a matter as to which the law gives the trial Judge very broad discretionary powers—as would warrant a reversal of the judgment upon that ground alone. The consideration, however, that, despite the trial Court's correct rulings as to the impropriety of the questions propounded, the legitimate bounds of cross-examination were in fact transcended by State's counsel, lends appreciable force, in the practical aspect, to the appellant's right to a reversal upon the other ground hereinabove discussed.

As to the disposition of the remaining exceptions treated in the separate opinion of Mr. Acting Associate Justice Purdy, I concur fully in his opinion.

MR. ACTING ASSOCIATE JUSTICE PURDY (concurring): I concur in the opinion of Mr. Justice Watts. He has disposed of the appeal by considering the exceptions which were particularly stressed in the argument before the Court, viz.: the alleged errors in (1) admitting the testimony of Mrs. Kirton; (2) the repeated questions propounded to the defendant concerning the killing of other persons; and (3) in permitting the jury to consider the testimony of A. J. Steele, although no motion was made to strike it out or to withdraw the case from the jury.

The argument and the authorities cited by Mr. Justice Watts are conclusive on all three of the points discussed and decided by him. Deeming this to be entirely sufficient, in concluding his opinion, his Honor says: "Inasmuch as I think there should be a new trial, the other exceptions are not considered by me."

Since there must be a new trial, we deem it best to pass upon all the exceptions, so that there may be no uncertainty at the next trial, should the same issues be again raised.

Exceptions 1 to 9, inclusive, allege error in permitting witnesses to give details of the wounds found upon the body of Mrs. Bigham, of Mrs. Majorie Black and upon the body of the little boy, John Mack McCracken. Each exception does not refer to all of the bodies, but the same questions are raised as to each of them in the exceptions named.

These exceptions must be overruled. A wide latitude was permitted in relation to these subjects, but this was in the discretion of his Honor, the presiding Judge. The examination must be confined within as narrow a compass as may be consistent with a right understanding of the facts sought to be brought out. Just what the limitations shall be must be left to the trial Judge, even though there may be an appearance of going into facts and circumstances which would be proper to be brought out were the defendant on trial for the killing of each of the parties named. The facts are so nearly related in point of time to the homicide with which the defendant is charged that any fact which tends to throw light upon that homicide is admissible. The exceptions would be well taken in the absence of such relationship.

Exception 10 and Exception 35 allege error in not striking out the testimony in reference to these subjects, and in not instructing the jury to disregard the testimony of the physicians and witnesses in reference thereto. These exceptions cannot be sustained.

Exceptions 11, 12, 13 and 14 allege error in allowing witnesses to testify to an alleged difficulty or trouble between the defendant and his sister, Mrs. Marjorie Black, on the Saturday preceding the homicide. It must be conceded that this is carrying the right to inquire into differences between the defendant and other members of his family to the very farthest extent, and one view of it might be construed as putting the defendant on trial for alleged assaults upon, and differences with his sister, Mrs. Black. 'There is one view, however, in which the testimony would be admissible, and for that reason the exceptions are overruled. This view cannot be discussed without discussion of facts which may arise in the next trial.

The fifteenth exception alleges error in admitting the testimony of Walter Burch, as to the conversation between himself and Mrs. Bigham on the Saturday before the tragedy. The defendant cannot be prejudiced by this, as it appears he was present and took part in the conversation, and this exception is overruled.

The sixteenth exception alleges error in admitting the examination of the skull of Mrs. Bigham and testimony concerning it. Other testimony in the case shows that it was competent to introduce the skull for the purpose for which it was sought to be used, and this exception is overruled.

The thirty-sixth exception alleges error in overruling the defendant's motion for a directed verdict in his favor. This exception is overruled.

The thirty-seventh exception alleges that the verdict and judgment based upon it are void, because the Court held beyond the day fixed for its adjournment, to wit, Court adjourned October 7, 1924, when it is alleged that the time for holding that Court expired on September 28. This exception is disposed of by reference to the statute, which makes it the duty of the trial Judge in such cases to continue the Court until the business is disposed of.

Code of Laws of S. C., Vol. 1, § 42, p. 21. See, also, *State v. Underwood,* 127 S. C., 1; 120 S. E., 719.

The exceptions not herein referred to have been treated and disposed of by his Honor, Justice Watts, in his opinion.

In view of the full and decided manner in which the case has been treated by Mr. Justice Watts, a further discussion of it could serve no useful purpose, and this concurring opinion is written only for the purpose first herein indicated.

MESSRS. JUSTICES COTHRAN and MARION concur.

MR. JUSTICE WATTS: I concur except so much of the opinion as overrules Exceptions 11, 12, 13 and 14. I dissent as to that.